United States Court of Appeals,

Eleventh Circuit.

No. 94-8772.

Ann C. JAMESON, Plaintiff-Appellant,

v.

The ARROW COMPANY, Defendant-Appellee.

Feb. 28, 1996.

Appeal from the United States District Court for the Northern District of Georgia. (No. 4:92-CV-223-HLM), Harold L. Murphy, Judge.

Before KRAVITCH and BIRCH, Circuit Judges, and GOODWIN[*], Senior Circuit Judge.

BIRCH, Circuit Judge:

This appeal presents the question of whether an employer's failure to rehire or to transfer an employee whose position is eliminated as part of a reduction in force can give rise to an inference of age and race discrimination. The district court granted summary judgment in favor of the employer on all claims. For the reasons that follow, we determine that material questions of fact remain for resolution with respect to the former employee's age and race discrimination claims. We AFFIRM in part, REVERSE in part, and REMAND for further proceedings consistent with this opinion.

I. BACKGROUND

Plaintiff-appellant, Ann C. Jameson, a white female over the age of fifty, was employed by Arrow at several of its plant locations in Georgia from May 19, 1969, until her termination on

---

[*]Honorable Alfred T. Goodwin, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

January 31, 1991.  In July of 1987, Jameson was assigned to the "Quick Response Project," a team task force designed to improve efficiency in various company facilities.  Bidermann Industries Corporation ("Bidermann") purchased Arrow in 1990.  Shortly thereafter, at Bidermann's direction, Arrow began to implement a significant reduction in force.  As part of this overall downsizing effort, the "Quick Response Project" was eliminated, and Jameson was discharged.  Arrow subsequently hired Marian Kelley, a twenty-three-year-old black woman, as human resources trainee, an entry level position for which Jameson was fully qualified.  At the time of her termination, Jameson was fifty-one years old.

Proceeding *pro se,* Jameson filed a timely complaint with the Equal Employment Opportunity Commission ("EEOC").  In amended complaints, Jameson alleged that her termination coupled with Arrow's failure to transfer or rehire her, and its decision to hire Kelley, constituted age and race discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.  Jameson later sought to amend her second amended complaint, filed by retained counsel, to add a claim stating that Arrow refused either to consider or to rehire Jameson for positions available after her discharge in retaliation for the filing of a complaint with the EEOC.  The district court concluded that Jameson had failed to establish a *prima facie* case of age discrimination because she had not presented evidence by which a factfinder could infer that Arrow's failure to transfer or rehire her was motivated by discriminatory animus based upon her

age. The court further resolved that, although Jameson had met her burden in setting forth a *prima facie* case of race discrimination, she had not succeeded in showing that Arrow's proffer of a legitimate reason for the failure to rehire her was pretextual. Finally, the court denied Jameson's motion to amend her complaint, and found that counsel's ten-month delay in supplementing the complaint with a new cause of action was unreasonable and prejudicial to the Arrow.

## II. DISCUSSION

We review *de novo* the district court's order granting summary judgment. *See Earley v. Champion Intern. Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990). Summary judgment is appropriate where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citation omitted). On a motion for summary judgment, we must review the record, and all its inferences, in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

In an employment discrimination case, the plaintiff must produce sufficient evidence to support an inference that the defendant employer based its employment decision on an illegal criterion. *See Alphin v. Sears Roebuck & Co.,* 940 F.2d 1497, 1500 (11th Cir.1991) (citing *Halsell v. Kimberly-Clark Corp.,* 683 F.2d 285, 290 (8th Cir.1982), *cert. denied,* 459 U.S. 1205, 103 S.Ct.

1194, 75 L.Ed.2d 438 (1983)).  This court generally has eschewed an overly strict formulation of the elements of a *prima facie* case, particularly in age discrimination cases.  *See id.*  At the summary judgment stage, our inquiry is whether an ordinary person could reasonably infer discrimination if the facts presented remained unrebutted.  *Id.* (quoting *Carter v. City of Miami,* 870 F.2d 578, 583 (11th Cir.1989)).[1]

A. ADEA Claim

This circuit has adopted a variation of the test articulated by the Supreme Court for Title VII claims in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for cases arising under the ADEA.  *See Mitchell v. Worldwide Underwriters Ins. Co.,* 967 F.2d 565, 566 (11th Cir.1992).  In order to make out a prima facie case for an ADEA violation, the plaintiff must show that she (1) was a member of the protected group of persons between the ages of forty and seventy, (2) was subject to adverse employment action, (3) was replaced with a person outside the protected group, and (4) was qualified to do the job.  *See Verbraeken v. Westinghouse Elec. Corp.,* 881 F.2d 1041, 1045 (11th Cir.1989), *cert. dismissed,* 493 U.S. 1064, 110 S.Ct. 884, 107 L.Ed.2d 1012 (1990).  These criteria are altered slightly in both a reduction-in-force ("RIF") case and where a position is eliminated in its entirety;  in these instances, the plaintiff

_____

[1]*See also Cronin v. Aetna Life In. Co.,* 46 F.3d 196, 203-04 (2d Cir.1995) ("[T]he function of the court on a summary judgment motion is to determine whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive ... It is not the province of the summary judgment court itself to decide what inferences should be drawn.")

establishes a *prima facie* case by demonstrating (1) that she was in a protected age group and was adversely affected by an employment decision, (2) that she was qualified for her current position or to assume another position at the time of discharge, and (3) evidence by which a fact finder could reasonably conclude that the employer intended to discriminate on the basis of age in reaching that decision. *See Mitchell,* 967 F.2d at 567-68; *Earley,* 907 F.2d at 1082; *Verbraeken,* 881 F.2d at 1045-46.

Here, Jameson does not dispute that the initial termination and consequent elimination of her position resulted from a legitimate RIF, but argues that Arrow's failure to transfer her or to rehire her for numerous positions available at the time of her termination constitutes evidence of discriminatory intent. Jameson emphasizes that she specifically expressed to a supervisor her interest in the position of personnel administrator—later filled by a younger woman—but was informed that Arrow did not plan to fill this position. She further suggests that the fact that Arrow transferred one younger employee from the Quick Response Project, and hired several younger individuals for other positions for which she was qualified, is evidence that the impermissible factor motivating Arrow's decisions was the desire to replace older female workers with younger employees.

In *Earley,* we established the basic proposition that, when an employer reduces its work force for economic reasons, it incurs no duty to transfer laid-off employees to other positions within the company. 907 F.2d at 1083. Significantly, although the plaintiff in *Earley* argued that he was neither transferred nor rehired into

positions available months before and after his discharge, he was unable to show that he was qualified for any position within the defendant-company available at the time of his discharge. Noting that the adoption of the plaintiff's argument would effectively "prohibit employers from planning and implementing RIFs if the reductions affected employees in the protected age group," *Earley*, 907 F.2d at 1083, n. 4, we concluded that by failing to show that he was qualified for a job available at the time of his termination, the plaintiff had failed to establish the second prong of his prima facie case. *Id.*

*Mitchell* presented a somewhat different circumstance. 967 F.2d 565. In *Mitchell,* as in *Earley,* the district court had found that the plaintiff failed to meet the second test enunciated in *Verbraeken*—that is, that he was qualified for a position available at the time of discharge—and granted summary judgment in favor of the employer. *Id.* at 568. We reversed and expressly recognized that evidence adduced by the plaintiff indicating that there may have been job openings for which he was qualified at the time of his termination, but for which he was not hired, gave rise to a material, disputed issue of fact, and that summary judgment therefore was inappropriate. *Id.* at 568. Although the court in *Mitchell* declined to explicitly elaborate on the third element of the plaintiff's *prima facie* case—whether the plaintiff had produced evidence that would permit a fact finder to infer intentional discrimination by the employer—the reasoning and ultimate holdings of both *Mitchell* and *Earley* suggest that where a job for which the plaintiff is qualified, and for which the plaintiff applies, is

available at the time of termination, and the employer offers the job to an individual outside the protected age group, an inference of intentional discrimination is permissible.

It is critical to note that this statement in no way represents a departure from this circuit's decisional law, but rather is a direct application of *Mitchell* and *Earley* to the facts of this case. It is undisputed that job openings for which Jameson was qualified existed at the time of her termination, and that Arrow hired younger employees to fill these vacancies. We hold that, although Arrow incurred no absolute duty to hire Jameson into any of these positions, its failure to do so, coupled with its decision to employ younger workers during its RIF, could give rise to a rebuttable inference that it intended to discriminate against Jameson on the basis of age. We emphasize that the ADEA does not mandate that employers establish an interdepartmental transfer program during the course of an RIF, *see Taylor v. Canteen Corp.,* 69 F.3d 773 (7th Cir.1995), require that "younger employees be fired so that employees in the protected age group can be hired," *see Earley,* 907 F.2d at 1083, or impose any added burden on employers to transfer or rehire laid-off workers in the protected age group as a matter of course. Rather, if the second element of the prima facie test under the ADEA, as articulated by this court in *Verbraeken, Earley,* and *Mitchell,* is to have any substantive meaning, it is that a discharged employee who applies for a job for which she is qualified and which is available at the time of her termination must be considered for that job along with all other candidates, and cannot be denied the position based upon her age.

An employer's decision to transfer or to hire a younger employee for that available position is sufficient evidence to support an inference of discrimination for the limited purpose of establishing the plaintiff's *prima facie* case; the employer then may rebut this inference by providing legitimate, non-discriminatory reasons for its decision which the plaintiff, in order to avoid summary judgment, must show to be pretextual. Our decision therefore is narrow in scope and does not purport to address the merits of Jameson's allegations. We do conclude, however, that the district court erred in its finding that Jameson failed to make out a *prima facie* case of age discrimination, and thus improperly granted summary judgment on this basis.[2]

B. Race Discrimination Claim

Jameson also contends that Arrow discriminated against her on the basis of race by expressly directing that a black female, Marian Kelley, be hired to assume an entry level job for which Jameson was qualified at the time of her discharge.[3] The district

---

[2]*See also Oxman v. WLS-TV,* 12 F.3d 652, 661 (7th Cir.1993) ("Although [defendant's] failure [to offer plaintiff a position before or after its decision to eliminate his job] certainly permits an inference of discriminatory intent, such an inference is not mandated."); *Cronin v. Aetna Life Ins. Co.,* 46 F.3d at 204-206 (where plaintiff produced evidence that employer recommended him for "consideration primarily for positions for which he was not well qualified" and "fail[ed] to surface his name for any of the positions for which he was best qualified," plaintiff "satisfied his de minimus burden to adduce evidence from which a rational inference of age discrimination could be drawn.")

[3]Jameson alleges the violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-2(m), providing that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex or national origin was a motivating factor for any employment practice ..."; and 42 U.S.C. § 1981, providing for equal rights for all persons within

court found that, although Jameson established a prima facie case of race discrimination[4], she failed to show that Arrow's proffer of legitimate, nondiscriminatory reasons for not hiring her for this position were pretextual. Specifically, the court determined that the following factors introduced by Arrow to justify its decision not to hire Jameson for this particular position adequately rebutted the inference of discrimination: (1) Arrow had no consistent policy of transferring employees who had been terminated; (2) Arrow had a policy of not transferring workers into positions that effectively would be demotions; and (3) the position for which Kelley was hired was slated to be in Atlanta, while Jameson lived and worked in Cedartown.

The record in this case indicates that the explanations relied on by the district court were based upon underlying issues of material fact that remain in dispute, and that the court not only improperly weighed the evidence submitted by each party, but also credited one version of events in granting summary judgment. For instance, Sandra Giles, a former employee relations manager at Arrow, testified that Arrow had "mov[ed] people around" during the RIF, and had transferred at least one plant manager to a personnel position. R6-61-83. By the same token, although Arrow posited that the entry level position for which Marian Kelley was hired

---

the United States to make and to enforce contracts. For purposes of our analysis of Jameson's allegation of race discrimination, we apply the same modified *McDonnell-Douglas* burden-shifting analysis adjusted to the specificities of an RIF case, as discussed above with respect to Jameson's ADEA claim.

[4]Arrow does not dispute on appeal the district court's finding that Jameson met the necessary elements of a *prima facie* case of race discrimination.

would have been a demotion, Houston Payne, a director of Human Resources at Arrow, stated that this position was created to "grow and develop into a position of increased responsibility." R6-61-73. Although a vice president of manufacturing at Arrow, Amos Turner, testified that he had notified Kelley that her position would be moved from Cedartown to the Atlanta area, Kelley stated in an affidavit that she was hired to work in Cedartown and was never informed that she would be maintaining an office in or near Atlanta. Finally, the parties consistently have disputed whether Arrow was aware of Jameson's interest in the various jobs for which she might have been eligible. Arrow asserts that Jameson never formally applied either for Kelley's job or any other opening; Jameson, on the other hand, insists that although she expressed to her immediate supervisor, James Jones, her interest in the personnel position later filled by Kelley, along with her general desire to find alternate employment at Arrow, supervisors Payne and Turner deliberately withheld from her information regarding possible opportunities. Both Sandra Giles and Jones testified that each had made inquiries of Turner and Payne on Jameson's behalf regarding the possibility of placing Jameson in a different job following her termination and were advised that no appropriate openings existed. Crediting the affidavits and deposition testimony submitted by Jameson for purposes of this motion, and drawing all permissible inferences in her favor, the trier of fact could reasonably find that (1) Arrow's contention that it did not transfer employees during the RIF was belied by the transfer of some younger workers during the period in which Jameson was

terminated; (2) Arrow partly justified its decision to hire a young, black woman for a human resources position for which Jameson was qualified by claiming that this job would have been a demotion for Jameson, yet Arrow anticipated that the position would evolve into one of increased responsibility over time; (3) Arrow withheld possible job opportunities for which Jameson could have applied, including the position held by Kelley, in an effort to prevent Jameson from being considered for a position slated for an African-American applicant.[5]

In sum, the evidence presented by Jameson was more than merely speculative, and thus satisfied her burden to produce sufficient evidence from which a rational inference of age and race discrimination could be drawn. Although from the evidence in the record thus far, a trier of fact could infer that there was no intent to discriminate against Jameson, it could infer instead that Arrow deliberately refused to transfer or to rehire Jameson for jobs for which she was qualified at the time of her discharge because of her age and race. It remains the province of the finder of fact to decide which inference should be drawn. *See Cronin v. Aetna Life Ins. Co.,* 46 F.3d at 206. The district court expanded its review of the record evidence beyond that which is permitted at the summary judgment stage. Accordingly, summary judgment was inappropriate.

C. Motion to Amend

Jameson asserts that the district court abused its discretion

---

[5]This last inference also is significant with respect to Jameson's age discrimination claim.

in denying her leave to amend her second amended complaint to add a claim for failure to rehire her based on retaliation for filing a complaint with the EEOC. The court found that Jameson sought to amend the complaint ten months after she retained counsel, discovery was closed, the complaint had been amended twice, and Arrow had filed two motions for summary judgment.

Rule 15(a) of the Federal Rules of Civil Procedure provides that "leave [to amend a party's pleading] shall be freely given when justice so requires." The decision whether to grant leave to amend is within the sound discretion of the trial court. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The Supreme Court has defined the parameters of Rule 15(a):

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Id.* Jameson argues that the substantial delay in seeking to amend the complaint to include a retaliation claim resulted from the district court's refusal to allow discovery to include information relevant to this claim. She further urges that the district court based this refusal on its erroneous determination that the amended complaint did not adequately state a claim for retaliatory failure to rehire.

Jameson asks us to apply an extraordinarily flexible pleading requirement in construing the allegations set forth in the complaint. Notwithstanding Jameson's suggestion that the district court should have interpreted the complaint liberally to include a

retaliation claim at the outset, the omission of any reference to the term "retaliation" in this context is significant, and renders the complaint more than minimally deficient in stating such a claim. Moreover, Jameson claims that her motion to compel filed on November 22, 1993, essentially stated the retaliation claim; yet, she did not move to amend the complaint to include this claim until May 6, 1994, one month after Arrow had filed its motion for summary judgment. Though we are mindful of the fact that Jameson was unable to obtain important information needed to pursue this claim until Houston Payne's deposition in March of 1994, it appears that the basic facts giving rise to the retaliation theory were available when the second amended complaint was filed. The considerable delay in seeking to amend the complaint for the third time, coupled with the request to amend subsequent to the filing of the defendant's motion for summary judgment, appear to have been unwarranted. The district court did not abuse its discretion in denying this request.

## III. CONCLUSION

In this appeal, Jameson argues that Arrow discriminated against her on the basis of age and race when it failed to transfer or to rehire her following a reduction in force. The district court erred in concluding at the summary judgment stage that Jameson failed to set forth evidence by which a trier of fact reasonably could conclude that Arrow intended to discriminate on the basis of age. The court further erred in crediting Arrow's justifications presented to rebut the inference of race discrimination when these justifications were based upon disputed

issues of material fact.  The court, however, did not abuse its discretion in denying Jameson's request to amend the complaint to include a claim of retaliatory failure to rehire.  We therefore AFFIRM in part, REVERSE in part, and REMAND for further proceedings consistent with this opinion.