Glenn H. WILDE, Plaintiff,

v.

FLORIDA PNEUMATIC
MANUFACTURING
CORP., Defendant.

No. 95–8117–CIV.

United States District Court,
S.D. Florida.

Oct. 1, 1996.

Thomas J. Schulte, Lee, Schulte, Eaton & Barron, Jupiter, FL, Neil H. Chonin, Chonin Sher & Navarrete, Coral Gables, FL, for plaintiff.

Charles S. Caulkins, James C. Polkinghorn, John C. Glancy, Fisher & Phillips, Fort Lauderdale, FL, for defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LENARD, District Judge.

In this civil action, plaintiff Glenn Wilde alleges that defendant Florida Pneumatic Manufacturing Corporation terminated his employment in violation of the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. §§ 621–34. Presently before the Court is Florida Pneumatic's motion for summary judgment, plaintiff's response and the reply thereto.

## Background

Mark Barnett, a previous president of Florida Pneumatic, hired plaintiff Wilde as senior vice president of sales and marketing in 1987. Deposition of Glenn H. Wilde, at 49. Wilde was fifty years old at the time. Wilde, at 5. Barnett hired Wilde with the understanding that one of Wilde's major objectives was to obtain the National Automotive Parts Association (NAPA) account. Wilde, at 50. Wilde obtained the account within one week after beginning work for Florida Pneumatic. Wilde, at 50. In 1988, Barnett resigned as president. Wilde, at 52. The Company hired Charles Swank as its new president. Wilde, at 53. Florida Pneumatic's parent company P & F Industries had become aware of Swank when it purchased a company Swank owned with a partner, Patrick Huffstutter. Wilde, at 53. Huffstutter was already employed at Florida Pneumatic as a sales manager at the time Swank came on as the Company's president. Wilde, at 54.

By 1993 it was clear to Wilde and NAPA that there were problems with the NAPA account. Wilde, at 66–67. NAPA felt that Florida Pneumatic was not competitive in its pricing or aggressive enough in its management of the account. Wilde, at 67. Wilde suggested improvements for the NAPA account to Swank which were not accepted. Wilde, at 67–68. Swank claimed that he did not want to invest any more money in the NAPA account and was indifferent about losing the account. Wilde, at 68, 76, 78.

On August 4, 1994, Swank terminated Wilde, giving no reason for his action. Wilde, at 70. Later, however, Wilde was told by another employee that Wilde was terminated due to the need for restructuring. Wilde, at 73–74. No other employees were terminated at that time. Wilde, at 94. After Wilde's termination, Swank assigned Wilde's previous duties to two existing employees, Huffstutter (fifty-four years old) and Lawrence Borowczyk (forty-two years old), Manager of Marketing Services. Wilde, at 74–76, 93; Deposition of Lawrence Borowczyk, at 12. Those employees were required to deal with the NAPA account in addition to their previous duties. Wilde, 74–76, 93. Florida Pneumatic lost the NAPA account soon after Wilde's departure, after NAPA gave it a chance to come up with a program that was better than that created in-house at NAPA over the prior two or three years. Deposition of Greg Lancour, at 13, 26 (Director of Product Development, NAPA). Borowczyk left Florida Pneumatic soon after the loss of the NAPA account. Borowczyk, at 7.

## Summary Judgment Standard

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court explained the summary judgment standard as follows:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of the 'pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; see also Fed.R.Civ.P. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

### *The Prima Facie Case Under the ADEA: Creating the Rebuttable Presumption*

The ADEA makes it unlawful for an employer to discharge any individual because of that individual's age. 29 U.S.C. § 623(a). Plaintiff states a prima facie case for violation of the ADEA when he shows that he (1) is a member of the protected age group, (2) was discharged, (3) was replaced by a person outside the protected group and (4) was qualified to do the work required by the position. *See, e.g., McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Jameson v. Arrow Co.,* 75 F.3d 1528, 1531 (11th Cir. 1996). Courts have modified this standard four-part inquiry to accommodate specific factual contexts, such as a reduction in force. In *Jameson,* the Eleventh Circuit recited the elements of the prima facie case in the reduc-

tion in force context: plaintiff (1) was a member of the protected age category (2) was discharged, (3) was qualified and (4) can show some evidence of discrimination on the basis of age (but not necessarily the mere replacement with a younger person). 75 F.3d at 1531–32. In the same case the Eleventh Circuit discussed the prima facie case on motion for summary judgment: "This court generally has eschewed an overly strict formulation of the elements of a prima facie case, particularly in age discrimination cases. At the summary judgment stage, our inquiry is whether an ordinary person could reasonably infer discrimination if the facts presented remained unrebutted (citations omitted)." 75 F.3d at 1531.

Wilde contends that he has established a prima facie case of discrimination in violation of the ADEA based on the standard *McDonnell Douglas* formula. Florida Pneumatic contends that Wilde could not have established the "replaced with a person of younger age" prong because it is simply inapplicable. Instead, it asserts the special "reduction in force" formula is applicable given Florida Pneumatic's assertion that Wilde's position was eliminated and the duties of that position were absorbed by existing employees. The Court finds that under the facts of this case, the *Jameson* reduction in force formulation of the prima facie case is properly applied here. Florida Pneumatic asserts that when the *Jameson* prima facie case is applied, Wilde fails to establish a prima facie case because of his inability to produce any evidence as to the fourth prong of *Jameson.* Although as noted by Wilde, "in proving a prima facie case, the plaintiff is not required to adopt as part of his case the reason given by the employer as to the discharge," *Hillebrand v. M–Tron Indus., Inc.,* 827 F.2d 363, 365 (8th Cir.1987), where, as here, it is undisputed that plaintiff's job was eliminated and absorbed by existing employees, the Court finds that it is most appropriate to apply the context specific formula discussed in *Jameson.*

Hence the first issue for resolution on the motion for summary judgment is whether in fact Wilde has produced any evidence tending to support an inference of discriminatory

intent on the part of Florida Pneumatic. Consistent with either formula, Wilde contends that the following evidence suffices to produce an inference of discriminatory intent: (1) Charles Swank's statement that "what the Company needed was youth," Wilde's Response, at 5; and (2) Swank's handling of the NAPA account over which Wilde had primary responsibility, i.e. taking an uninterested stance toward the account while part of Wilde's duties and then setting it as a priority with those reassigned to it after Wilde's discharge. Wilde's Response, at 6–7.

### Swank's Statements

■ In response to Wilde's assertion that Charles Swank's statement constitutes evidence of discriminatory intent, Florida Pneumatic argues that the statement constitutes stray comment evidence which is too attenuated from the facts surrounding Wilde's discharge to be relevant. The Eleventh Circuit has never directly approached the question of which stray comments provide evidentiary weight for purposes of the prima facie showing. One circuit court decided that comments made by employees without decision making authority may be factored into the prima facie case, while other circuit courts give weight to only those comments made by decision makers. Still others would give evidentiary weight only to those comments made by a decision maker in the context of the adverse employment action taken toward the plaintiff.

For example, in *EEOC v. Clay Printing Co.*, 955 F.2d 936, 942 (4th Cir.1992), the Fourth Circuit spoke directly to stray comments, quoting *Smith v. Flax*, 618 F.2d 1062, 1066 (4th Cir.1980): "In any enterprise, today's juniors will be tomorrow's seniors. Today's seniors can help create a foundation for tomorrow's growth and prosperity, but future realization of the potential of an enterprise lies principally with those who will be in positions of leadership and responsibility in the future." In neither case did the court find that such statements contribute at all to the prima facie showing necessary under *McDonnell Douglas. Clay Printing*, 955 F.2d at 943; *Smith*, 618 F.2d at 1066. In *Gagne v. Northwestern Nat'l Ins. Co.*, 881

F.2d 309, 315 (6th Cir.1989), the Sixth Circuit found that similar comments, consisting of "isolated remark[s] uttered by [a] supervisor during a meeting attended by a number of employees, . . . made facetiously and . . . not directed at any particular individual" do not support a finding of discrimination, and therefore do not produce an inference supporting the prima facie case. In *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 9 (1st Cir.1990), the court held that neither comments relating to the elderly nature of the sales force in the context of a sales force productivity study nor a non-decision making employee's reference to plaintiff as an "old man" were significantly probative to create a triable issue as to pretext for the finder of fact.

In contrast, the Seventh Circuit found in *Futrell v. J.I. Case*, 38 F.3d 342, 347 (7th Cir.1994), that stray comments constitute circumstantial evidence supporting an inference of discrimination. The court cited *Ostrowski v. Atlantic Mutual Ins. Cos.*, 968 F.2d 171, 182 (2d Cir.1992), for the proposition that "such discriminatory statements alone do not prove a discriminatory discharge, but they 'may suffice to present a prima facie case . . . and may indeed persuade the fact finder that the plaintiff had carried his or her ultimate burden of persuasion.'" 38 F.3d at 347. The two cases are distinguishable, however. The comments at issue were made by an employee without decision making authority in *Ostrowski* and by one with decision making authority in *Futrell*.

Therefore, the Second Circuit appears to be the only circuit which has held that stray comments made by non-decision making employees may support a prima facie case of age discrimination. The Fifth and Seventh Circuits occupy the middle ground and would find that stray comments made by decision makers in any context may support a prima facie case. *See, e.g., Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41–42 (5th Cir.1996). The First, Third, Fourth, Sixth, Eighth, Ninth and Tenth Circuits have thus far found only those comments made by decision makers in context of the negative employment decision to be supportive of a prima facie case. *See, e.g., Aucutt v. Six Flags Over Mid–America, Inc.*, 85 F.3d 1311, 1315–16 (8th Cir.1996); *MacDonald v. Swedish*

*Health Svcs.,* 91 F.3d 153 (9th Cir.1996); *Edwards v. Liberty Nat'l Bank & Trust Co.,* 89 F.3d 849 (10th Cir.1996); *Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 333 (3d Cir.1995). Based on the position of the majority of the courts of appeals and the specific facts of this case, the Court finds that Swank's statement, made wholly apart from the decision to dismiss Wilder, is not probative of an intent to the discriminate on the basis of age and therefore does not assist Wilde in making out his prima facie case.

### *Swank's Treatment of the NAPA Account*

■ The other evidence of discriminatory intent offered by Wilde to establish his prima facie case is Swank's handling of the NAPA account. Wilde alleges that although Swank knew early on that the account was in jeopardy, Swank made no effort to save the account until after Wilde had been terminated and others had been reassigned to the account. Specifically, Wilde alleges that all of the suggestions he had made to improve relations with NAPA were ignored until after his dismissal. At that point, alleges Wilde, Swank implemented his ideas. Finally, although Swank told Wilde that his termination was necessary for purposes of reorganization, Wilde disputes the credibility of Swank's indicated reason given that no other employees were terminated at the time. Although the precise motivation behind Swank's decision to fire Wilde is unclear to the Court, what is clear is that Wilde's age does not emerge as one of the possibilities given the evidence presented by Wilde.

As the evidence submitted in support of Wilde's prima facie case is wholly insufficient to shift the burden to Florida Pneumatic under the framework laid out in *McDonnell Douglas,* the Court finds that summary judgment shall be entered for the defendant. It is thereby

**ORDERED AND ADJUDGED** that defendant's motion is **GRANTED.**

**DONE AND ORDERED** in Chambers in Miami, Florida, this 30th day of September, 1996.