Wayne F. KRIST, Plaintiff

v.

**GATES POWER DRIVE PRODUCTS,**
Defendant.

No. CV 96–D–90–S.

United States District Court,
M.D. Alabama,
Southern Division.

Dec. 6, 1996.

Ray T. Kennington, Ozark, AL and Joseph J. Gallo, Daleville, AL, for plaintiff.

Richard H. Sforzini, Jr., Dana C. Gibson, Montgomery, AL, for defendant.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

This matter is now before the court on Defendant Gates Power Drive Products, Inc.'s ("Gates") motion for summary judgment and brief in support filed on September 18, 1996. Plaintiff, Wayne F. Krist ("Krist"), responded in opposition to Defendant's motion on October 4, 1996, and Gates filed a reply to this response on October 21, 1996.

After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court finds that Gates's motion for summary judgment is due to be denied.

### JURISDICTION

Based upon 28 U.S.C. § 1331 and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., the court properly exercises subject matter jurisdiction over this action. The parties do not contest personal jurisdiction or venue.

### STATEMENT OF FACTS

Krist was hired by Gates on or about January 22, 1976. Jill E. Carvalho Aff. ¶ 3. His employment ended on November 15, 1993 when his position was terminated. Letter from Gordon L. Carpenter to Krist of 10/22/93. The Plaintiff was fifty-three (53) years old on the date of his termination. Pl.'s Br. at 1. Krist alleges in this ADEA action that his termination by Gates was based upon his age. Krist seeks compensa-

tory damages, attorney's fees, and as well as any other equitable relief to which he may be entitled.

From his hiring in January of 1976 until his eventual dismissal in 1993, Krist worked at the Gates[1] plant in Dothan, Alabama. Br.Supp.Pl.'s Resp. to Mot.Summ.J. ("Resp.Br.") at 1–2. Krist served in the position of Materials Manager from the date of his hire until April 1, 1993, when he was demoted to the position of Buyer. Carvalho Aff. ¶¶ 3–4, 8. Concurrently with this demotion, Krist was advised of a "specific action plan spelled out for his performance for the next 90 days." Id. at ¶ 8. At the same time, the Gates facility was under significant production problems due to a downturn in the automotive industry and loss of a key Dothan facility customer. Carvalho Aff. ¶ 5; Br. in Supp. of Mot.Summ.J. ("Summ.J.Br.") at 2–3. In an October 22, 1993, letter, Krist was informed that he would be terminated effective November 15, 1993, due to the elimination of his position "[a]s a result of declining business conditions." Letter from Carpenter to Krist. Approximately three months after Krist's termination, Jayna Sanders ("Sanders") a 28 year old female was hired by Gates as the Dothan facility's Master Scheduler. Russell M. Poole, Jr., Second Aff. ¶ 5. Krist alleges that the Master Scheduler position is the equivalent of the eliminated Buyer position.

Krist filed a charge of discrimination with the Equal Employment Opportunity Commission, received a right to sue letter on October 18, 1995, and filed this action on January 17, 1996.

### SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no

---

1. In 1976 the Dothan facility was known as Steel Spun, Inc. which was a corporate subsidiary of Aspro, Inc. Br.Supp.Mot.Summ.J. ("Summ.J.Br.") at 2 n. 1. Subsequently, Steel Spun, Inc. was a subsidiary of Dyneer Corporation. Id. Both of these organizations were corporate predecessors of Gates. Id.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue

for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

### *DISCUSSION*

■ The ADEA provides that "[i]t shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (brackets supplied). In order to fall under the ADEA's protections, an employee must be "at least 40 years of age." *Id.* at § 631(a). The Eleventh Circuit Court of Appeals has adopted a variant of the *McDonnell Douglas* prima facie test for ADEA actions requiring a plaintiff to show that he or she (1) was between the age of forty and seventy; (2) was subjected to adverse employment action, (3) was replaced by someone outside the protected group, and (4) was qualified for his or her position. *Jameson v. Arrow Co.,* 75 F.3d 1528, 1531 (11th Cir.1996).

■ In cases of a reduction in force ("RIF") or the wholesale elimination of a position, the test is modified and a plaintiff must show that he or she (1) was in a protected age group and was adversely impacted by the employment action, (2) was qualified for the current position or qualified to assume another position at the time of discharge, and (3) must present evidence which allows the fact finder to reasonably conclude that the employer intended to discriminate

based upon age. *Id.* at 1532. In this case, Gates alleges that the elimination of Krist's position was required as part of a plant-wide RIF. Summ.J.Br. at 3. Therefore, the court finds that the RIF modified prima facie test is appropriate for evaluating Krist's claim.

It is undisputed that Krist meets the first element of the RIF prima facie test. *See* Summ.J.Br. at 9. Krist must also prove that he was qualified for another position at the time of discharge and that Gates acted with discriminatory intent in terminating his employment. Krist contends[2] that he satisfies the second element because he was qualified for a newly created position at the time of his termination. Krist further contends that Gates circulated a "hit list" of protected group employees prior to the RIF. Such evidence could constitute evidence of Gates's discriminatory intent—the third prong of the RIF prima facie test.

 An employee meets the second prong of the RIF prima facie test by showing that a position was "available in the company at the time" the employee's position was terminated. *Earley v. Champion International Corp.,* 907 F.2d 1077, 1083 (11th Cir. 1990); *see also Jameson,* 75 F.3d at 1532; *Mitchell v. Worldwide Underwriters Ins. Co.,* 967 F.2d 565, 568 (11th Cir.1992). This prong is not met if a position exists "either well before the time of plaintiffs' termination or several months after their termination." *Earley,* 907 F.2d at 1083. Therefore, if a position is open either well before a plaintiff's termination or well after the termination, then it is as if no opening existed. *See id.* Gates contends that Sanders was not hired until three months after Krist's termination. Russell M. Poole, Jr. Second Aff. ¶ 5. This gap suggests that the Master Scheduler position did not exist at the time Krist was eliminated. However, close examination of the submitted position description shows that the Master Scheduler position description was dated December 7, 1993. Krist had been terminated only three weeks prior to the preparation, final review, and signing of

this document. The fact that the description was finalized three weeks after Krist's departure suggests that the Master Scheduler position was contemplated prior to December 7, 1993. Based upon the date of final review and related inferences, the court finds that the Master Scheduler position was available close enough to the time of Krist's termination to satisfy the RIF prima facie second prong.

However, Krist must also show that he was qualified for the allegedly available position. *See Mitchell,* 967 F.2d at 568. The Dothan facility's personnel manager, Russell M. Poole, Jr., explains that the Master Scheduler's primary duties are "much broader than the Buyer's duties" and included several scheduling functions that Krist's position did not entail. *Id.* at ¶ 4. Poole also claims that while Krist was qualified to purchase raw materials and component parts, he was not competent to perform all of the Master Scheduler duties. *Id.* at ¶ 5. In contrast, Eddie Arnold, a former Gates's employee, claims that Sanders's job description and duties were the "same" as Krist's. Eddie Arnold Aff.

An independent examination of the two job descriptions supports Gates's contentions that the Master Scheduler position covered one segment of Krist's former position while also including an additional area of responsibilities. However, Arnold did not just read the job description; he was present to observe the nuances of the presentation of the new position to Gates's personnel. Based upon Arnold's observation, the court finds that a material issue of fact exists over any differences between the Buyer and Master Scheduler positions. Since the positions may have been equivalent, there is also a material dispute over Krist's qualifications for the new position. Therefore, the court finds that Krist has produced enough evidence to convince a reasonable fact finder that the Master Scheduler position was available at the time of his termination and that he was qualified for that position.

---

**2.** The court construes Krist's contentions in light of the RIF prima facie test and matches Krist's contentions to the test prongs.

In order to prove a prima facie case Krist must also produce sufficient evidence of Gates's discriminatory intent. Eleventh Circuit decisions have not provided a thorough description of this prong. *See Mitchell,* 967 F.2d at 568 (omitting this prong from discussion); *Earley,* 907 F.2d at 1083 (affirming district court's grant of summary judgment where plaintiff did nothing more than allege employer's discriminatory intent). However, in a recent RIF decision the Eleventh Circuit noted its earlier decisions suggest that in cases where the plaintiff provides a sufficient showing on the second prong, "an inference of intentional discrimination is permissible." *Jameson,* 75 F.3d at 1532. Therefore, satisfaction of the second prong may in itself satisfy the third prong as well.

Krist has not only adequately shown evidence of the second prong, he has also shown further evidence of discriminatory intent by producing the alleged "hit list." This document dated September 1, 1992, lists the names of thirteen Gates's employees, their positions, their dates of birth, their ages, years of service, and blank columns for the employees' annual salary and the "Severance Amount." Resp.Br.Ex. 2. Ramona Segler in her capacity as the Dothan personnel manager was provided a copy of the same document. Ramona Segler Aff. Segler felt that the document was a list of those Gates's employees who were to be terminated from Gates's Dothan operation. *Id.* Ten of the thirteen listed employees were within the ADEA protected group. Resp.Br.Ex. 2. Krist encourages the court to infer that this list constitutes evidence of Gates's intent to focus on older employees during the Dothan RIFs. Resp.Br. at 3, 5.

Gates counters by explaining that this list was nothing more than a list of "all exempt, salaried employees as of the fall of 1992." Second Poole Aff. ¶ 8. The list was allegedly compiled solely for planning severance pay amounts in possible administrative discharges which would occur in the case of plant closure. *Id.* However, even while contending that the list would be used only in the case of a plant closure, Gates acknowledges that Krist received a severance package as part of the RIF process. *Id.* at ¶ 9.

Not every document containing employee birth dates constitutes evidence of an employer's discriminatory intent. *See Earley,* 907 F.2d at 1082. Employers can use employees' birth dates and age compilations as part of management's effort to evaluate natural attrition and as part of a restructuring and RIF plans. *Id.* Plaintiffs must avoid producing documentary evidence that is " 'so attenuated and weak' as to be at best merely colorable and not significantly probative." *Id.* While Gates has produced an explanation for the alleged "hit list," the court finds that the document still provides evidence of Gates's alleged discriminatory intent and provides an alternative basis for finding that Krist has fulfilled the third prong of the RIF prima facie test.

■ Since Krist has shown a prima facie ADEA claim, the burden now shifts to Gates to produce a legitimate nondiscriminatory reason for the elimination of Krist's position. *See Isenbergh v. Knight–Ridder Newspaper Sales, Inc.,* 97 F.3d 436, 440 (11th Cir.1996).[3] As previously discussed, Gates claims that the Buyer position was eliminated as part of the Dothan RIF due to business concerns. The court finds that Gates has satisfied its burden of production and that the *McDonnell Douglas* framework " 'drops out' of the case leaving the jury to decide the ultimate question of whether the employer intentionally discriminated on the basis of age." *Id.* (citing *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 510–11, 113 S.Ct. 2742, 2748–50, 125 L.Ed.2d 407 (1993)).

■ Since Gates has met its burden of production, Krist must show "that [Gates's] proffered reason for the adverse employment decision was false and discrimination was the real reason." *See Id.* at 441. However, it is unclear if reasonable evidence of falsity is enough to prevent, as a matter of law, a court from ruling for the employer. *Id.* at 441–43. The bulk of Eleventh Circuit precedent suggests that courts which find suffi-

**3.** The Eleventh Circuit's original *Isenbergh* decision which was cited in Gates's brief, 84 F.3d 1380, 1387 (11th Cir.1996), was issued on June 10, 1996, and withdrawn on September 19, 1996. The appellate court withdrew the original decision in an effort to "better explain [its] thoughts." *Isenbergh,* 97 F.3d at 438.

cient evidence of falsity are still free to grant judgment in favor of the defendant employer. *See id.* However, *Howard v. BP Oil Co.*, 32 F.3d 520, 527 (11th Cir.1994), suggests that a court's rejection of the employer's proffered reason precludes judgment for an employer. *See also Isenbergh,* 97 F.3d at 442–43 (discussing *Howard* decision in light of other Eleventh Circuit decisions). The *Isenbergh* court suggests either that *Howard*'s holding is limited to summary judgment situations or if the holding applies to other situations, then it is based upon an incorrect interpretation of *Hicks.* 97 F.3d at 441–43. Ultimately, *Isenbergh* suggests that courts must carefully weigh evidence suggesting falsity and determine if the evidence also proves intent or if the evidence bears only on falsity and judgment for the employer is appropriate.

In the final analysis, *Isenbergh* has little impact on the present action. In this matter, the court concludes that Krist has produced enough evidence to create a reasonable inference of falsity and an inference of discriminatory intent. The court bases its finding on evidence of the alleged "hit list" and evidence suggesting that Krist's position was filled by a person outside the protected group.[4] The combination of these two bodies of evidence convince the court that a reasonable jury could conclude that Gates's proffered reason for the Buyer position RIF was false and that Krist was terminated based upon his age. Therefore, the court finds that Gates's motion for summary judgment is due to be denied.

### CONCLUSION

Based on the foregoing analysis, it is CONSIDERED and ORDERED that Defendant's motion for summary judgment be and the same is hereby DENIED.

---

**4.** The court also notes Eleventh Circuit precedent suggesting that summary judgment is inappropriate in Title VII cases where the plaintiff has established a prima facie case. *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 921 (11th Cir.1993); *Batey v. Stone,* 24 F.3d 1330, 1336 (11th Cir.1994) (noting that summary judgment is inappropriate in employment discrimina-

tion because factual findings require examination of motive and intent). These decisions suggest that in situations where a plaintiff has made substantial allegations suggesting discriminatory intent, a court is best advised to allow the case to proceed to trial. The court finds such a situation in this case which further supports its denial of Gates's motion for summary judgment.