[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-11917
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 23, 2012
JOHN LEY
CLERK

D.C. Docket No. 3:09-cv-1220-TJC-MCR

LINDA L. DIEHL,
an individual,

                                        Plaintiff-Appellant,

versus

BANK OF AMERICA, N.A.,
a National Association,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____
(April 23, 2012)

Before MARCUS, COX and SILER,[*] Circuit Judges.

SILER, Circuit Judge:

_____

[*]Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

Plaintiff Linda Diehl appeals the district court's grant of summary judgment to Defendant Bank of America (BOA). Diehl filed an amended complaint against BOA in 2010 alleging violations of the Age Discrimination in Employment Act (ADEA), the Americans with Disabilities Act (ADA), and the Family Medical Leave Act (FMLA). For the following reasons we affirm.

## I.

Diehl was a Senior Vice President at BOA and had worked at the bank for 34 years. She was diagnosed with breast cancer in July 2008 and took FMLA leave from September 15, 2008 to November 10, 2008 to seek treatment. Shortly after her return, BOA restructured her position and removed her management responsibilities. In early February 2009 Diehl was terminated as part of a reduction in force (RIF). She was 55 years old at that time.

Diehl's manager was Ann McCormick, who had been in that position since the end of 2007. McCormick's boss, Kevin Phalen, joined BOA in June 2008. Phalen's boss was William "Dub" Newman.

## A.

When Phalen arrived at BOA he immediately started looking for ways to streamline the bank's management structure. He spoke with McCormick about consolidating the responsibilities of Diehl with one of her peers, Marybeth Worsham.

The women had similar responsibilities and managed an equal number of people at BOA, with Diehl working on the bank's private credit/debit card business and Worsham responsible for BOA's government credit/debit card business. At some point in late summer or early fall of 2008, McCormick and Phalen decided to transfer Diehl's credit card responsibilities and subordinates to Worsham. They informed Worsham in October or November 2008.

Diehl was informed of this decision in December 2008, approximately one month after she returned from FMLA leave. When McCormick informed Diehl about the decision she said to Diehl, "So that should take the stress off you." BOA claims it chose Worsham over Diehl because Worsham was a better manager, had more knowledge and experience with BOA's credit card system, and had experience with Diehl's private credit card responsibilities, whereas Diehl had no experience with Worsham's government credit card responsibilities.

After the restructuring, Diehl's title, salary and benefits remained the same and she continued working on a project known as the LaSalle transition.

B.

Rumors about layoffs at BOA began circulating when Diehl returned from leave in November 2008. The topic of layoffs was discussed during a November 13, 2008 meeting that McCormick had with her subordinates, which included Diehl and

3

Worsham. McCormick stated that her supervisor, Phalen, had not been notified of any layoffs. Worsham responded that she did not have enough years of service with BOA to retire. During that conversation, McCormick stated, "We have our old-timer, Linda [Diehl], who has 30-some years; right Linda?"

In late December 2008, Newman learned that BOA wanted a ten percent RIF in effect by early 2009. He informed Phalen in January 2009 of the planned layoffs, and Phalen subsequently told his subordinates, including McCormick, to begin selecting employees for termination.

Diehl was selected to be terminated, but there is some confusion with regard to who made that decision. In her deposition, McCormick stated that Phalen told her Diehl would be let go. Phalen says that McCormick recommended Diehl for termination. Newman initially stated that he was "[n]ot personally" involved in the decision to terminate Diehl. But after his deposition Newman filed an errata that stated that he had reviewed his email from January 2009 and discovered that he had suggested Diehl to Phalen as someone to consider for termination.

In late January 2009, McCormick was told that Diehl would be a victim of the RIF. She informed Diehl on February 3, 2009.

BOA did not replace Diehl with anyone because the bank completely eliminated her position after the layoffs. Her remaining duties were distributed to other BOA employees.

Despite the absence of any evidence in the record, Diehl believes that her BOA supervisors knew about the RIF before they decided to restructure her job and used the restructuring decision to justify their decision to terminate her.

## II.

## A.

"The ADEA makes it 'unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.' 29 U.S.C. § 623(a)(1)." *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000). "When a plaintiff alleges disparate treatment, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 130, 141(2000) (quotations and citations omitted).

The *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden shifting analysis is applied to determine if there was age discrimination, when the claim is based on circumstantial evidence. *Chapman*, 229 F.3d at 1024. Under this

5

framework, the plaintiff must establish a *prima facie* case of discrimination by (1) showing she is a member of the protected class, (2) she suffered an adverse employment action, (3) she was qualified to do the job, and (4) was replaced by or lost a position to a younger person. *Id.* Once the plaintiff establishes a *prima facie* case, "the defendant employer must articulate a legitimate, nondiscriminatory reason for the challenged employment action. However, the employer's burden is merely one of production; it need not persuade the court that it was actually motivated by the proffered reasons." *Id.* (quotations and citations omitted).

If the employer provides a nondiscriminatory reason, "the presumption of discrimination is eliminated" and the plaintiff must put forth evidence "sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Id.* (quotations and citations omitted). "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Id.*

i.

BOA argues that Diehl's job restructure was not an adverse employment action. BOA states her title, pay and benefits remained the same even though she was no

longer supervising two subordinates. Diehl states that she and her coworkers considered the move a demotion.

An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc., v. Ellerth*, 524 U.S. 742, 761 (1998). Since the restructure meant that Diehl would not manage any subordinates it should be considered a "reassignment with significantly different responsibilities," especially since Diehl's new role with BOA was eventually considered expendable and eliminated.

But Diehl cannot prove the restructure was done because of her age. BOA wanted to streamline its processes under one manager instead of two. BOA states it selected Worsham because she knew the credit card processing system better than Diehl, had experience with Diehl's responsibilities but Diehl had no experience with Worsham's responsibilities, and Worsham was managing her division better than Diehl.

Diehl counters that these reasons are pretextual because of some comments from her supervisor. McCormick called Diehl an "old-timer." But as the district court held, "this statement was made in the context of comparing years of service between employees," and is not evidence of discriminatory intent. The statement was made

7

after the restructure decision was made and announced to Worsham, which makes it irrelevant to this claim. "Remarks such as this one–isolated and unrelated to the challenged employment decision–are not direct evidence of discrimination." *Rojas v. Florida*, 285 F.3d 1339, 1342-43 (11th Cir. 2002). Accordingly, Diehl's ADEA claim for the restructuring decision fails.

ii.

BOA argues that Diehl cannot establish her *prima facie* case because her position was eliminated after her termination as a part of its RIF, making it impossible for Diehl to be replaced by a younger person. Diehl counters that the "old timer" remark, BOA's inability to reveal who made the decision to terminate her and that BOA "essentially 'hired,' or at least selected" Worsham–who is 16 years younger than Diehl–rather than Diehl for the remaining management position is evidence of discrimination.

We have generally "eschewed an overly strict formulation of the elements of a *prima facie* case, particularly in age discrimination cases." *Jameson v. Arrow Co.*, 75 F.3d 1528, 1531 (11th Cir. 1996).

> A plaintiff may establish a *prima facie* case of age discrimination in a reduction-in-force case by (1) demonstrating that he was in a protected age group and was adversely affected by an employment decision; (2) showing he was qualified for his former position or another position at the time he was adversely affected; and (3) producing circumstantial or direct evidence from which a reasonable factfinder could conclude that

8

his employer intended to discriminate on the basis of age in reaching the decision at issue.

*Maddow v. Procter & Gamble Co.*, 107 F.3d 846, 851 (11th Cir. 1997).

But even if we accept that Diehl has established her *prima facie* case from the transfer of her responsibilities to Worsham, Diehl cannot prove she is the victim of age discrimination. The only evidence of discrimination she has is the "old timer" comment, which in context refers to her tenure at BOA and not her age, and BOA's inability to specify who made the decision to terminate her. As the district court stated, "whoever made the termination decision, [BOA] has put forward a legitimate, non-discriminatory reason for the action it took," *i.e.*, the ten percent reduction in force. Without more, Diehl's age discrimination claim fails.

### B.

Under the ADA, an employer cannot discriminate against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). ADA claims are also analyzed under the *McDonnell Douglas* format. *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007). A plaintiff establishes a *prima facie* case by establishing (1) she was disabled, (2) she was qualified for her job and (3) suffered an adverse action because of her disability. *Id.* at 1255-56.

9

BOA does not dispute Diehl was disabled but states that she cannot prove causation. As the district court held, "there is no evidence in the record from which a reasonable factfinder could conclude that . . . her termination [was] a pretext for disability discrimination." Diehl argues that her lower performance evaluation, which occurred after she was diagnosed with cancer, is evidence of causation. But this merely proves that the two events coincided, not that they were causally related. Diehl also cites McCormick's comment about Diehl's stress level when she told her about the restructure decision as evidence of discrimination. However, this comment concerned the restructure decision, an ADA claim Diehl has abandoned on appeal, not the termination decision. Accordingly, her ADA claim fails.

C.

The FMLA grants employees "12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee," 29 U.S.C. § 2612(a)(1), and afterwards the employee must "be restored by the employer to the position of employment held by the employee when the leave commenced" or to an equivalent position. 29 U.S.C. § 2614(a)(1). The FMLA has two types of claims to enforce these rights: "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, *see* 29 U.S.C. §

10

2615(a)(1), and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act, *see* 29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220(c) ('An employer is prohibited from discriminating against employees . . . who have used FMLA leave.')." *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1206 (11th Cir. 2001).

To establish a retaliation claim, "an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." *Id.* at 1207 (citation omitted). "In other words, a plaintiff bringing a retaliation claim faces the increased burden of showing that his employer's actions were motivated by an impermissible retaliatory or discriminatory animus." *Id.* (quotation and citation omitted).

FMLA claims are also analyzed under the *McDonnell Douglas* format. *Id.* (citation omitted). The employee's *prima facie* case is made by showing: "(1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity." *Id.* (citation omitted).

The district court is correct that Diehl did not prove causation. Diehl cites McCormick's comment that her new restructured role at BOA should relieve her stress level, the timing of the job restructuring and termination decisions and the reference

11

to Diehl's leave of absence on her performance review as evidence that BOA retaliated against her for taking FMLA leave. The district court correctly found that the stress comment "[a]t most, [] evidences a concern for Diehl's well-being, not any animus from Diehl's exercise of her FMLA rights." Diehl has shown the decisions to restructure and terminate her position coincide with her FMLA leave but not that they were caused by her FMLA leave. As the district court held: "[T]he reference to Diehl's leave in her review is not a negative reference, but is rather an explanatory reference. McCormick was merely seeking to explain why Diehl was not able to meet all of her goals for the review period." Since Diehl is unable to prove causation, her FMLA claim fails.

AFFIRMED.