**Sybil MAY, et al., Plaintiffs,**

v.

**FULTON COUNTY, GEORGIA, et al., Defendants.**

**Civil Action No. 1:92–cv–2042–HTW.**

United States District Court, N.D. Georgia, Atlanta Division.

June 7, 1995.

---

Michael Weinstock, Richard John Capriola, Weinstock & Scavo, Atlanta, GA, Harvey D. Harkness, Barton J. Bradshaw, Awtrey & Parker, Marietta, GA, for Sybil May.

Michael Weinstock, Richard John Capriola, Weinstock & Scavo, Atlanta, GA, for Turner K. Goldsmith.

Susan Barker Forsling, Viviane Mildred Haight, Linda Kay Thompson, Office of Fulton County Attorney, Atlanta, GA, for Fulton County, Georgia, Edward Fuller, Garrett Flakes, James D. Fraley, Bradley J. Boyd, Carl Davis.

Walter Brown Russell, Jr., Russell Russell & Sheppard, Decatur, GA, Edward G. Sheppard, Jr., Office of Edward G. Sheppard, Jr., Decatur, GA, for Algene Lewis.

## ORDER OF COURT

HORACE T. WARD, Senior District Judge.

This matter is currently pending before this court on (1) defendants Fulton County, Georgia, Carl Davis, Bradley Boyd, James Fraley, Edward Fuller, and Garrett Flakes' amended motion for summary judgment on plaintiff Sybil May's complaint, and (2) defen-

dants[1] motion for summary judgment on plaintiff Turner K. Goldsmith's complaint.

*FACTS*

On October 12, 1991, Turner Jonathan Goldsmith ("John Goldsmith"), who was 16 years old, ran away from his home. Earlier that day, he had been confronted by his mother, plaintiff Sybil May ("May"), and his stepfather and May's husband Bryan May ("stepfather") regarding what appeared to be stolen stereos found in John Goldsmith's closet.[2] Shortly thereafter, May or her husband called the city of Atlanta police department. A police officer came to their house and filled out a report.

On or about October 15, 1991, John Goldsmith was arrested and brought to the Fulton County Juvenile Detention Center, where he was detained pending a preliminary hearing. In response to a question by a detention worker at an initial screening that asked whether he had ever tried to injure himself, John Goldsmith answered "no."

On October 18, 1991, a preliminary hearing was held on the charges against John Goldsmith before Judge Josephine Hunnicutt. After the hearing, John Goldsmith talked with his stepfather and May. At that time, his stepfather did not perceive John Goldsmith to be depressed. Thereafter, John Goldsmith was returned to the Detention Center. From approximately 9:15 to 9:30 p.m. on October 19, 1991, John Goldsmith spoke with his stepfather over the telephone. They talked about the Braves game, and John Goldsmith asked his stepfather to bring food with him on the family's visit, which was to occur the next day.

At 11:30 p.m. on October 19, 1991, there was a shift change at the Detention Center; Algene Lewis, a level I detention worker, was assigned to work in the section in which John Goldsmith was housed. This section, on the second floor of the Detention Center, is known as the "A and B section." Lewis' shift lasted until 7:30 a.m. on October 20, 1991.

Defendant Edward Fuller, a level II detention worker, also was working on the second floor that night. Fuller was not Lewis' supervisor, thus Lewis ordinarily did not report to Fuller. Nor did Fuller train or have responsibility for training Lewis or monitoring his activities on a regular basis. On October 19 and 20, 1991, though, Fuller was in charge of the second floor of the Detention Center for the 11:30 p.m. to 7:30 a.m. shift. As a result, on that night Fuller supervised Lewis and Lewis reported to Fuller during the course of that shift. It appears that Lewis was not trained in suicide prevention or in recognizing suicide risks.

Defendant Flakes, a level I detention worker, also was assigned to work on the second floor of the Detention Center during that same shift. Flakes, though, was not assigned to work in the section in which John Goldsmith was being housed.

At approximately 4:30 a.m. on October 20, 1991, John Goldsmith was found dead in his cell. He had hung himself. There is no evidence that John Goldsmith had attempted or threatened to commit suicide in the past. When May was asked at her deposition whether John Goldsmith had suicidal tendencies, she said "no." Similarly, John Goldsmith's stepfather testified that John Goldsmith did not have suicidal tendencies. In addition, the Fulton County Juvenile Detention Center had a written policy of "suicide watch" for juvenile detainees. John Goldsmith was never placed on suicide watch.

On October 22, 1991, Lewis was reassigned temporarily so that he had no duties which involved supervising juveniles. On November 1, 1991, Lewis was fired. During the subsequent investigation into John Goldsmith's death, it was determined that Lewis admitted that he did not perform his hourly room checks after 2:00 a.m. The record contains no evidence that, during the evening in question, Fuller was aware that Lewis was not performing his hourly room checks.

May commenced this action in August 1992 alleging that defendants violated 42 U.S.C.

---

1. Hereinafter, the term "defendants" shall be deemed to refer to all defendants in this case, except for Algene Lewis.

2. Turner K. Goldsmith is John Goldsmith's natural father.

§ 1983 in that they violated John Goldsmith's rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. May also alleges violations of 42 U.S.C. §§ 1985 and 1986, and asserts a state law wrongful death claim. On December 29, 1993, this court granted Turner K. Goldsmith's ("Turner Goldsmith") motion to intervene. Turner Goldsmith's claims mirror those of May. Defendants move this court for summary judgment on the claims brought by plaintiffs May and Turner Goldsmith (collectively, "plaintiffs").

## DISCUSSION

### A. *Summary Judgment Standard*

 Summary judgment is appropriate if the moving party establishes that there is no genuine issue as to any material fact and that he or she is entitled to judgment as a matter of law. *Carlin Communication, Inc. v. Southern Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir.1986); *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983); Fed.R.Civ.P. 56(c). To determine if the moving party meets its burden of proof, the court must view all evidence and inferences to be drawn from it in a light most favorable to the party opposing the motion. *Carlin Communication*, 802 F.2d at 1356; *Sweat v. Miller Brewing Co.*, 708 F.2d 655, 656 (11th Cir. 1983).

The Supreme Court has addressed the burdens of proof which each party must carry on a motion for summary judgment and stated that:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quotation omitted).

 The nonmoving party is required to identify specific facts which demonstrate that there is a genuine issue for trial and may not rest on the allegations or denials in its pleadings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). However, in order to survive a motion for summary judgment, the non-moving party need only present evidence from which a jury might return a verdict in his or her favor. If he or she does so, there is a genuine issue of fact that requires a trial. *Id.* at 257, 106 S.Ct. at 2514.

### B. *Summary Judgment on Sybil May's and Turner K. Goldsmith's Claims*

#### 1. *42 U.S.C. § 1983 Claims*

 In order to prevail under 42 U.S.C. § 1983 for a violation of substantive rights in the context of an inmate's suicide, a plaintiff must prove that the jail official displayed deliberate indifference to the prisoner's taking of his own life. In *Tittle v. Jefferson County Com'n*, 10 F.3d 1535, 1539 (11th Cir. 1994) (en banc), the Court held that "a finding of deliberate indifference requires that officials have notice of the suicidal tendency of *the* individual whose rights are at issue in order to be held liable for the suicide of that individual." *Id.* (emphasis in original). Defendants "cannot be liable under § 1983 for the suicide of a prisoner 'who never threatened or attempted suicide and who had never been considered a suicide risk.'" *Id.* at 1540 (quoting *Edwards v. Gilbert*, 867 F.2d 1271, 1277 (11th Cir.1989)). In short, as a result of the 1994 *Tittle* case, the focus is on the mental condition of the individual at issue, and defendants' notice of that condition. *Id.*

 Moreover, deliberate indifference can only be established if a plaintiff shows a "strong likelihood"—rather than a mere possibility—that suicide would result from defendant's actions or inactions. *Id.* Plaintiffs also acknowledge that, standing alone, weak-

nesses in the suicide screening process cannot amount to deliberate indifference.[3]

■ Plaintiffs attempt to create a material issue of fact as to whether John Goldsmith had suicidal tendencies. The deposition testimony cited by plaintiffs, however, merely shows that John Goldsmith suffered from depression, was on medication, and was in a treatment and counseling center for a number of months. There is no evidence that he had ever threatened to commit suicide or had been considered a suicide risk by anyone, much less the defendants in this case.

May also claims that she gave certain information about John Goldsmith to a city of Atlanta police officer prior to John Goldsmith's arrest. May admits, though, that this information did not indicate that she believed John Goldsmith was suicidal, or even depressed, but only that he was involved in Satan worship and had been in various treatment programs.

In short, there is no evidence from which a reasonable jury could conclude that John Goldsmith had suicidal tendencies or was considered a suicide risk by defendants or anyone else. The result is the same even assuming *arguendo* that defendants' were negligent in their supervision of John Goldsmith and the other occupants of the Detention Center. Thus, under *Tittle* defendants cannot be said to have acted with deliberate indifference.[4] Therefore, defendants are entitled to summary judgment on plaintiffs' § 1983 claims.

### 2. *42 U.S.C. §§ 1985 and 1986 Claims*

■ Plaintiffs also appear to claim that defendants violated 42 U.S.C. §§ 1985 and 1986.[5] Defendants contend that § 1985(3)— which prohibits conspiracies to violate federal rights—is the only section that possibly applies to this case. Section 1985(3) requires that four elements be satisfied:

> (1) a conspiracy; (2) for the purpose of directly or indirectly depriving any person or class of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) that one or more of the conspirator's actions were in furtherance of the conspiracy; and (4) that the plaintiff's person or property was injured or that he was deprived of exercising a right or privilege of a United States citizen.

*Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). In addition, the allegations supporting these elements must be specifically pled. *Cole v. Gray*, 638 F.2d 804 (5th Cir.), *cert. denied*, 454 U.S. 838, 102 S.Ct. 144, 70 L.Ed.2d 120 (1981).

In this case, defendants claim that plaintiffs have failed to specifically identify the alleged conspirators or their discriminatory conduct. Thus, defendants argue that plaintiffs cannot make out a claim under § 1985; nor can their § 1986 claims survive, as a § 1986 claim is dependent on an actionable § 1985 claim. As stated above, plaintiffs' response memoranda do not address the claims made under §§ 1985 and 1986.

In sum, this court agrees with defendants that plaintiffs have failed to show that any issue of fact exists relating to their § 1985 and § 1986 causes of action. This court also concludes that defendants are entitled to judgment as a matter of law on these claims.

### 3. *Qualified Immunity*

■ The individual defendants (that is, all defendants,[6] as defined above, except for Fulton County) other than defendant Flakes next argue that they are entitled to summary

---

**3.** Turner Goldsmith requests that this court depart from the "deliberate indifference" standard set forth in *Tittle*. However, he has failed to provide this court with authority to support the propriety of such a departure.

**4.** *See also Edwards v. Gilbert*, 867 F.2d 1271, 1275 (11th Cir.1989), *rev'd in part on other grounds*, 5 F.3d 1431 (11th Cir.1993) ("In the absence of a previous threat of or an earlier attempt at suicide we know of no federal court in the nation or any other court within this circuit that has concluded that official conduct in failing

to prevent a suicide constitutes deliberate indifference.").

**5.** Defendants contend that plaintiffs have failed to specifically plead these claims. In addition, their respective response memoranda do not address these claims.

**6.** As stated above, the term "defendants" does not include defendant Algene Lewis, who is not a movant here.

judgment, based on the doctrine of qualified immunity, for plaintiffs' claims based on John Goldsmith's due process right to life and right to be free from cruel and unusual punishment under the Fifth and Eighth Amendments.[7] At the outset, this court notes that the defense of qualified immunity does not bar suits against government actors in their official capacities. *Lassiter v. Alabama A & M University, Bd. of Trustees*, 28 F.3d 1146, 1149 n. 2 (11th Cir.1994). Qualified immunity may only preclude individual capacity claims.

The Eleventh Circuit Court of Appeals has set forth an objective reasonableness test, under which qualified immunity protects government officials unless they are " 'plainly incompetent' " or " 'knowingly violate the law.' " *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir.1991) (quotation omitted). Eligibility for qualified immunity under this test is determined on an objective basis, not the officer's subjective beliefs. *Shaw v. Oconee County, Ga.*, 863 F.Supp. 1578, 1582 (M.D.Ga.1994).

This objective test is a two-step process. A defendant first must show that he or she "was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir.1983). In *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir.1994), the court noted that, for qualified immunity purposes, "discretionary authority" is defined broadly to include all actions by a government official that " '(1) were undertaken pursuant to the performance of his duties,' and (2) were 'within the scope of his authority' " (quotation omitted). *Jordan* also noted that " 'it would be unwise to engage in a case by case determination of Section 1983 immunity based upon the ministerial versus discretionary nature of the particular act challenged.' " *Id.* (quotation omitted). In the instant case, defendants have established that they were acting within the scope of their discretionary authority at all times relevant herein.

Second, the burden shifts to the plaintiff to prove that defendant violated clearly established law based on objective standards. *Lassiter*, 28 F.3d at 1150 n. 3 (citing *Barts v. Joyner*, 865 F.2d 1187, 1190 (11th Cir.1989)); *Eubanks v. Gerwen*, 40 F.3d 1157, 1160 (11th Cir.1994). Thus, defendants will prevail if (1) the law was not clearly established, or (2) the law was not violated. *Shaw*, 863 F.Supp. at 1582. In determining whether plaintiff can carry this burden, this court must assume as true plaintiff's version of the facts. *Horlock v. Georgia Dept. of Human Resources*, 890 F.2d 388, 393 (11th Cir.1989). However, if case law " 'has not staked out a bright line, qualified immunity almost always protects the defendant.' " *Lassiter*, 28 F.3d at 1150 (quotation omitted).

For a court to find that a plaintiff was deprived of a clearly established right for the purpose of qualified immunity analysis, " '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right.' " *Horlock*, 890 F.2d at 394 (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). "[C]ourts judge the acts of defendant government officials against the law and facts at the time defendants acted, not by hindsight, based on later events." *Lassiter*, 28 F.3d at 1150. Thus, for the purposes of qualified immunity analysis, defendants' actions must be judged when they occurred.

As stated above, the above-referenced individual defendants carried their burden of showing that they were acting within their discretionary authority. In addition, this court finds that plaintiffs have not shown that defendants violated clearly established law at any time relevant herein. Thus, the doctrine of qualified immunity bars plaintiffs' claims against defendants Davis, Boyd, Fraley, and Fuller in their individual capacities. Therefore, to the extent that such claims have not already been dismissed in this Order, this court concludes that all of plaintiffs'

---

7. As stated below, defendant Flakes argues that May's federal and state law claims against him

must fail as a matter of law.

individual capacity claims against these individual defendants shall be dismissed.

### 4. Claims Against Defendant Garrett Flakes

■ Defendant Flakes argues that plaintiffs' federal and state claims against him must fail as a matter of law. Defendant Flakes has introduced evidence that he was not assigned to the particular section in which John Goldsmith was being detained, had no responsibility for checking John Goldsmith's room, and had no supervisory responsibility over defendant Lewis. Plaintiffs have failed to introduce any contrary evidence or to otherwise create a material issue of fact as to defendant Flakes.[8] Thus, this court concludes that defendant Flakes is entitled to summary judgment as to all of plaintiffs' claims.

### 5. Official Immunity

■ The individual defendants also argue that—with respect to plaintiffs' state law claims—they are protected by official governmental immunity, as they have acted (1) within their discretionary authorities, and (2) without malice or wilfulness. Thus, they argue, all official capacity state law claims are barred. *See Hennessy v. Webb*, 245 Ga. 329, 331, 264 S.E.2d 878 (1980); *Gilbert v. Richardson*, 264 Ga. 744, 452 S.E.2d 476 (1994). This court agrees. Plaintiffs have not introduced any evidence of malice or wilfulness with respect to any of these defendants. Regardless of whether all defendants acted appropriately, there is no evidence that any of them acted maliciously or wilfully. Thus, the individual defendants are entitled to official immunity to the extent they are sued in their official capacities.

### 6. Sovereign Immunity

■ Defendant Fulton County, Georgia claims that it is entitled to sovereign immunity with respect to plaintiffs' wrongful death claims.[9] Defendant Fulton County cites numerous authorities for the proposition that counties are not liable for any cause of action, unless a statute provides otherwise. *See, e.g., Toombs County, Georgia v. O'Neal,* 254 Ga. 390, 330 S.E.2d 95 (1985); O.C.G.A. § 36–1–4. Since the Georgia General Assembly has not consented to allowing citizens to sue counties for the state law tort of wrongful death, Fulton County argues, it is entitled to summary judgment on May's wrongful death claim. May has failed to present any authority to support her arguments that sovereign immunity is inapplicable here. Turner Goldsmith cites the January 1994 case *City of Thomaston v. Bridges,* 264 Ga. 4, 439 S.E.2d 906 (1994), for the proposition that counties may not avail themselves of sovereign immunity. As defendants note, though, a September 1994 case, *Gilbert v. Richardson,* 264 Ga. 744, 452 S.E.2d 476 (1994), states that counties may assert the defense of sovereign immunity.[10] Moreover, plaintiffs have not shown that this immunity has been expressly waived for wrongful death actions.[11]

Thus, this court concludes that defendant Fulton County is entitled to summary judgment, based on sovereign immunity, on plaintiffs' wrongful death claims.

### C. Defendant Algene Lewis

The above rulings apply to all defendants in this case other than Algene Lewis, as he

---

8. This court rejects May's attempt to create a material issue of fact as to defendant Flakes' responsibilities during the evening in question. While May cites Flakes' deposition testimony that he opens the cell doors at 4:15 a.m. every day when the inmates start their personal hygiene, this testimony does not create an issue of fact regarding his responsibility for checking John Goldsmith's room earlier that evening.

9. As stated above, defendants are entitled to summary judgment on all other claims; thus, only plaintiffs' wrongful death claims will be addressed here.

10. This case also stands for the proposition that county officials sued in their official capacities may raise all defenses available to the county, including sovereign immunity. *Id.* at 746 n. 4, 452 S.E.2d 476.

11. Further, such a waiver argument would be inconsistent with plaintiffs' position that counties are not entitled to sovereign immunity protection in the first place.

neither filed a motion for summary judgment nor joined in the other defendants' motions. If defendant Lewis had filed or joined in such a motion, it appears likely that similar rulings would have been made as to him. Therefore, after due consideration and in the interest of judicial economy, this court GRANTS defendant Lewis leave to file a motion for summary judgment, or adopt the motions filed by the other defendants, within twenty (20) days of receipt of this Order.

### CONCLUSION

Therefore, after due consideration, this court (1) GRANTS defendants Fulton County, Georgia, Carl Davis, Bradley Boyd, James Fraley, Edward Fuller, and Garrett Flakes' amended motion for summary judgment on plaintiff Sybil May's complaint, (2) GRANTS defendants Fulton County, Georgia, Carl Davis, Bradley Boyd, James Fraley, Edward Fuller, and Garrett Flakes' motion for summary judgment on plaintiff Turner K. Goldsmith's complaint, and (3) GRANTS defendant Algene Lewis leave to file a motion for summary judgment, or adopt the motions filed by the other defendants, within twenty (20) days of receipt of this Order.[12]

SO ORDERED.

---

12. As a courtesy to the clerk of court, this court advises the clerk that this Order terminates entry nos. 31 and 59 on the docket sheet.