**James STUBBLEFIELD, Bobby Jernigan, and Billy Whitaker, Plaintiffs,**

v.

**TRINITY INDUSTRIES, INC., Defendant.**

**Civil Action No. 96–A–893–N.**

United States District Court, M.D. Alabama, Northern Division.

April 16, 1997.

**1554**

Julian McPhillips, Montgomery, AL, for Plaintiffs.

David M. Curtis, Lori M. Carr, Dallas, TX, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

ALBRITTON, District Judge.

### *I. INTRODUCTION*

This cause is before the court on a Motion for Summary Judgment filed by the Defen-dant, Trinity Industries, Inc. ("Trinity") on December 16, 1996.

The Plaintiffs, James Stubblefield ("Stub-blefield"), Bobby Jernigan ("Jernigan"), and Billy Whitaker ("Whitaker") (collectively "the Plaintiffs") filed a complaint in this court on May 29, 1996, bringing claims against Trinity for violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et. seq. ("ADEA").

For reasons to be discussed, the Trinity's motion for summary judgment is due to be GRANTED in part and DENIED in part.

### *II. FACTS*

The submissions of the parties establish the following facts:

Trinity Industries operated two plants in the State of Alabama, Plant # 77 and Plant # 32, up until October of 1995, when Plant # 77 was sold to Carolina Steel. In Febru-ary of 1995, before Plant # 77 was sold, Trinity eliminated its Estimating and Sales Department at Plant # 77 and terminated the employees who had been employed in that department. One of those employees was Plaintiff Stubblefield.

Stubblefield was 62–years–old at the time the Plaintiffs filed their complaint against Trinity for violation of the ADEA. Stubble-field had been employed by Trinity since 1966. He was first employed as a draftsman and then as an estimator. At the time his employment was terminated, Stubblefield held the position of "chief estimator" of the Estimating and Sales Department. In Feb-ruary of 1995, Cecil Spear ("Spear"), Vice–President of Trinity, informed Stubblefield that he was being terminated along with the other employees in the Estimating and Sales Department.

After Stubblefield's termination, in Octo-ber of 1995, Plant # 77 was sold to Carolina Steel. Plaintiff Jernigan is a 57 year-old man who worked for Trinity for 31 years, working first as a welder and then working in the position of production coordinator. Jernigan held the position of production coor-dinator at Plant # 77 at the time of his

termination. While his job was physically located at the premises of Plant # 77, Jernigan also performed shipping duties for Plant # 32. Jack Cunningham ("Cunningham"), Vice President of Trinity, informed Jernigan in October of 1995 that he was being terminated from his employment with Trinity and that there were no positions available for him at Trinity.

Plaintiff Whitaker is a 54 year-old man who worked at Trinity as a mechanical draftsman for approximately 7 years and then worked as a purchasing agent for Trinity for 22 years. While his job was physically located at the premises of Plant # 77, Whitaker also performed purchasing for Plant # 32. Whitaker was informed by Cunningham in October of 1995 that he was being terminated and that there were no positions available for him with Trinity.

When Plant # 77 was sold, some employees of Plant # 77 were given jobs at Plant # 32.[1] Neither Stubblefield, Jernigan, nor Whitaker were given jobs at Plant # 32. However, Randy Mulligan ("Mulligan"), a person outside of the protected class who was formerly employed at Plant # 77, was transferred to Plant # 32. In addition, Joe Vallancourt ("Vallancourt"), an employee who worked at Plant # 32, assumed the shipping and purchasing duties of Jernigan and Whitaker after their termination.

### III. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2553. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof *Id.* at 322–23, 106 S.Ct. at 2552–52.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### IV. DISCUSSION

The ADEA makes it unlawful for an employer to discharge any individual because of that individual's age. 29 U.S.C. § 623(a). There are three means by which a plaintiff may seek to establish a prima facie case of age discrimination: by direct evidence of discriminatory intent, by meeting the test developed by the United States Supreme Court in

---

**1.** Trinity has provided evidence as to the ages of the people at the time they were transferred:
Thomas Germanson, age 60; William Messick, age 48; Fatima Middlebrooks, 56; Randy Mulligan, 31; Cecil Spear, 60; Peggie Speed, 54; and George Vardaman, 66.

the context of Title VII cases, or by proof of a statistical pattern of discrimination. *See Verbraeken v. Westinghouse Elec. Corp.,* 881 F.2d 1041, 1045 (11th Cir.1989), *cert dismissed,* 493 U.S. 1064, 110 S.Ct. 884, 107 L.Ed.2d 1012 (1990). The Plaintiffs in this case have not provided direct evidence of discrimination,[2] nor any statistical evidence, but seek instead to prove a prima facie case of discrimination on the basis of age by offering circumstantial evidence of discrimination.

In cases arising under the ADEA, the Eleventh Circuit has adopted a variation of the test articulated by the United States Supreme Court in the context of circumstantial evidence cases arising under Title VII. *See Jameson v. Arrow Co.,* 75 F.3d 1528, 1531 (11th Cir.1996). A plaintiff states a prima facie case for violation of the ADEA upon a showing that (1) he or she is a member of the protected age group between the ages of forty and seventy, (2) was subject to an adverse employment action, (3) was replaced by a person outside the protected group and (4) was qualified to do the job. *Id.* at 1531. These criteria are altered when there is a reduction-in-force case so that a plaintiff must show that (1) he or she was in a protected group and was adversely affected by an employment decision, (2) that he or she was qualified for the current position or to assume another position at the time of discharge, and (3) the plaintiff has provided evidence by which a fact finder could reasonably conclude that the employer intended to discriminate on the basis of age in reaching that decision. *Id.*

After the plaintiff has established a prima facie case of discrimination, the burden of production is placed upon the employer to articulate a legitimate nondiscriminatory reason for its employment action. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). The plaintiff then has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997). Although disbelief of the employer's proffered reason does not require judgment for the plaintiff, disbelief together with the plaintiffs prima facie case, is sufficient circumstantial evidence to preclude entry of judgment as a matter of law. *Id.* at 1532.

Because the claim asserted by Stubblefield arises out of events which are distinct from the events giving rise to the claims asserted by Jernigan and Whitaker, the court will examine Stubblefield's claim separately from those asserted by Jernigan and Whitaker.

### 1. Stubblefield's Claim

Trinity has provided evidence that Stubblefield's position was eliminated when Trinity, in an effort to downsize, eliminated the Estimating and Sales Department at Plant # 77. Stubblefield's Deposition, page 38. Stubblefield has not disputed this evidence, therefore, this court will apply the prima facie case elements to Stubblefield's claim which are required when there is a reduction in the workforce or elimination of a position: (1) the plaintiff was in a protected group and was adversely affected by an employment decision, (2) the plaintiff was qualified for the current position or to assume another position at the time of discharge, and (3) the plaintiff has provided evidence by which a fact finder could reasonably conclude that the employer intended to discriminate on the basis of age in reaching that decision.

**2.** The Plaintiffs have offered affidavits of Rex Fronduti, a former Trinity plant manager, stating that this evidence is "smoking gun" evidence. Plaintiffs' Response, page 17. The Plaintiffs, however, later indicate that they consider Fronduti's affidavits to be "strong circumstantial evidence." Plaintiffs Response, page 18. Therefore, the court will assume that the Plaintiffs did not mean to imply that they were proceeding under a direct evidence theory. To the extent that the Plaintiffs were seeking to proceed under a direct evidence theory, their arguments are unavailing because the statements testified to by Fronduti, since they do not relate to the employment decisions at issue, are not direct evidence of discrimination. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 276, 109 S.Ct. 1775, 1804, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring).

■ It is undisputed that Stubblefield is within a protected group and was adversely affected by an employment decision. As to the second prima facie case requirement, Stubblefield has provided evidence that he was qualified for the position from which he was eliminated. However, where "a particular job is entirely eliminated for nondiscriminatory reasons, for plaintiff to prevail against his employer he must show that he was qualified for another available job with that employer, qualification for his current position is not enough." *Earley v. Champion International Corp.*, 907 F.2d 1077, 1082 (11th Cir.1990); *Williams v. General Motors Corp.*, 656 F.2d 120, 129 (5th Cir. Unit B Sept.1981), *cert denied*, 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982); *Langston v. Carraway Methodist Hospitals of Alabama* 840 F.Supp. 854 (N.D.Ala.1993).

Stubblefield has provided evidence that he was at least as qualified as John Gilliam, a person younger than Stubblefield, who was retained as a chief estimator at Trinity's Houston, Texas location. *See* Cunningham deposition, page 23. The Plaintiff must show, however, that "a position for which he was qualified was available in the company at the time [his employer] terminated his employment." *Earley*, 907 F.2d at 1083. Trinity argues that the Plaintiffs evidence as to Stubblefield's qualifications, relative to those of Gilliam, does not establish that there were any open positions for which Stubblefield was qualified.

■ To the extent that Stubblefield is arguing that he, rather than Gilliam, should have been retained by Trinity since Stubblefield was more qualified, this argument is unavailing. The ADEA imposes no requirement upon an employer to take a younger, less experienced employee out of a job in order to make room for an older employee who is being subject to layoff. *See Earley*, 907 F.2d at 1083 ("Nothing in the ADEA requires that younger employees be fired so that employees in the protected age group can be hired."). The Plaintiffs have provided no other evidence of positions for which Stubblefield was qualified. Therefore, this court finds that Stubblefield has failed to produce evidence sufficient to allow a reasonable jury to conclude that a position for which Stubblefield was qualified was available at the time of his termination. Trinity is therefore entitled to summary judgment as to Stubblefield's claim.

## 2. Jernigan and Whitaker

Trinity has provided evidence that Jernigan and Whitaker were terminated when Plant # 77 was sold to Carolina Steel, effectively eliminating Jernigan's and Whitaker's positions at Plant # 77. The Plaintiffs do not appear to dispute that Jernigan's and Whitaker's positions at Plant # 77 were eliminated. Therefore, this court will apply the prima facie case elements relevant to a reduction-in-force/elimination-of-position case.

■ It is undisputed that both Jemigan and Whitaker are persons who are within the protected class and that they were adversely affected by an employment decision. However, even though the parties have assumed that the reduction-in-force prima facie case elements are applicable, they disagree upon what the elements of such a case are. According to Trinity, the Plaintiffs must show that they applied for available positions. For this proposition, Trinity relies on language in an Eleventh Circuit opinion stating that the second part of a reduction-in-force prima facie case means that "a discharged employee who applies for a job for which she is qualified and which is available at the time of her termination must be considered for that job along with all other candidates ..." *Jameson*, 75 F.3d at 1533. The Plaintiffs, on the other hand, argue that Trinity has misconstrued the required prima facie case elements because in many cases, such as the instant case, the terminated employee could be prevented from bringing an age discrimination claim by an employer who simply did not tell the plaintiff about available jobs, thereby preventing the terminated employee from applying for such a position. The Plaintiffs point to evidence that Cunningham told Jernigan and Whitaker that they were being terminated and that there were no positions at Trinity available for them. Cunningham deposition, pages 13, 14. The court, therefore, finds that even if *Jameson* was intended to create a requirement in every

case that plaintiffs show that they applied for available positions, the Plaintiffs have at least created an issue of fact as to whether they were precluded from applying for positions by Trinity's actions. *Cf. Taylor v. Hudson Pulp and Paper Corp.* 788 F.2d 1455 (11th Cir.1986) (excusing plaintiff from prima facie case requirement of applying for a position when it was clear such application was futile).

The Plaintiffs must, however, show that Jernigan and Whitaker were qualified for positions which were available at the time of their termination. Trinity argues that there were no positions available at the time that Jernigan and Whitaker were terminated. Trinity states although the Plaintiffs have alleged that they were replaced by younger employees, they have failed to provide evidence which would allow a reasonable factfinder to conclude that a younger employee was hired into a position which had been held by Jernigan and Whitaker.

In reviewing the Plantiffs' arguments, the court understands the Plaintiffs to be arguing that Jernigan and Whitaker were replaced by the younger employees Joe Vallancourt and Randy Mulligan because Vallancourt took over Jernigan's and Whitaker's jobs and Mulligan took over part of Vallancourt's job. Trinity, however, disputes this characterization of the events occurring after the sale of Plant #77. Therefore, the court will examine the evidence presented by the parties to determine if an issue of fact has been created as to whether there was a position available into which Jernigan and Whitaker could have been hired.

The parties have provided evidence which reveals the positions held by Jernigan, Whitaker, Vallancourt, and Mulligan prior to the sale of Plant #77, and their positions once Plant #77 was sold. It is apparently undisputed that before Plant #77 was sold to Carolina Steel, Jernigan had been performing shipping duties and Whitaker had been performing purchasing duties for Trinity's #77 and #32 plants. The Plaintiffs have

provided the testimony of Mitch Walls, Plant #32 manager, to show that Vallancourt's job prior to the sale of Plant #77 had been receiving and safety director. Walls deposition, page 25. It is apparently undisputed that Vallancourt also did some shipping and purchasing duties before Plant #77 was sold. Trinity has provided deposition testimony of Mulligan which shows that he handled blueprints and calculated pay weights, among other duties, while he was employed at Plant #77. Mulligan deposition, page 8.

It is apparently undisputed that when Plant #77 was sold, Jernigan and Whitaker were terminated and Vallancourt took over the shipping and purchasing responsibilities that Jernigan and Whitaker once had performed. According to Trinity, Vallancourt cannot be viewed as a replacement for Jernigan and Whitaker because he merely assumed duties that were in addition to the duties he already performed. For this argument, Trinity cites several cases, which the court agrees establish that a person is not to be considered a replacement employee merely because that person takes over duties once performed by terminated employees.[3] Trinity further argues that since Vallancourt was employed at Plant #32 rather than Plant #77, to have retained either Jernigan or Whitaker rather than Vallancourt would have meant that Vallancourt would have been "bumped" from his position.

The Plaintiffs, however, have provided evidence which raises an issue of fact as to whether Vallancourt merely assumed new duties in a position which he already held, or actually took on a new position. It is undisputed that after the sale of Plant #77, Mulligan was transferred to Plant #32. The Plaintiffs have provided the deposition testimony of Walls in which he states that when Plant #77 was sold, Mulligan took over Vallancourt's receiving and safety director job in addition to the duties Mulligan had been performing at Plant #77. Walls deposition, page 25. The testimony of this Trinity official establishes that Mulligan took over at least part of Vallancourt's position. Vallanc-

---

**3.** *See e.g., Barnes v. GenCorp, Inc.,* 896 F.2d 1457 (6th Cir.) *cert. denied,* 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171(1990)(person is not replaced when another employee is assigned to perform that person's duties in addition to other duties); *May v. Fulton County,* 925 F.Supp. 769 (N.D.Ga.1995); *Myers v. Glynn–Brunswick Memorial Hosp.,* 683 F.Supp. 1387 (S.D.Ga.1988).

ourt, who was no longer in the receiving and safety director positions, assumed duties once performed by Jernigan and Whitaker. Spear Affidavit, para. 10. The Plaintiffs' argument under the ADEA, therefore, appears to be that Trinity terminated Jernigan and Whitaker when it could have transferred them, or one of them, to Plant # 32 to take over the job created to handle the shipping and purchasing aspects of Vallancourt's job, rather transferring the younger Randy Mulligan to take over the job created to handle the safety and receiving aspects of Vallancour's job. The court finds, therefore, that the Plaintiffs' evidence has created a genuine issue of material fact as to whether there was a position into which Jernigan or Whitaker could have been hired.

The prima facie case also requires a showing that the open position which may have existed at the time that Jernigan and Whitaker were terminated was a position for which they were qualified. There is apparently no dispute that Jernigan and Whitaker were both qualified for their respective positions at Plant # 77. Since the duties which they performed in their former positions were duties assumed by Vallancourt, this court finds that the Plaintiffs have presented a jury question as to whether they were qualified for the position which Vallancourt held after the sale of Plant # 77. While the Defendants have offered evidence to show that Vallancourt had both shipping and purchasing experience, in light of the fact that no evidence has been presented by Trinity to establish what the qualifications for Vallancourt's position were, Trinity's evidence may establish that Vallancourt was more qualified than Jernigan or Whitaker, but it does not establish that neither Jernigan nor Whitaker was qualified for the arguably new position.

The final prima facie case requirement in a reduction-in-force case is that a reasonable jury could conclude that the employer intended to discriminate on the basis of age. The Plaintiffs have argued that an inference of discrimination can be drawn when there is a reduction-in-force and younger employees are retained while older employees are terminated. The Plaintiffs rely on *Jameson* in arguing that although Trinity incurred no absolute duty to hire Jernigan and Whitaker into a position, the failure to do so, coupled with the decision to employ younger workers during a reduction-in-force, gives rise to an inference of intent to discriminate. *See Jameson*, 75 F.3d at 1532.

The Plaintiffs have also provided evidence which, although not rising to the level of direct evidence, could provide a basis for an inference that age was a factor in Trinity's employment decisions. The Plaintiffs have provided the affidavits of a former Trinity plant manager, Rex Fronduti, who stated that Don Johnson, President of Structural Affairs at Trinity, told Fronduti that he would be replaced because, "you always did a good job, but you are getting to that age." Fronduti Affidavit 1, para. 6. Fronduti also testified that John Sanford, a Trinity executive, told Fronduti that his "age and salary kept popping up on the computer." *Id.* at para. 7. Fronduti further testified that Johnson had stated, with regard to another employee who was not offered a transfer, that "he's too old." Fronduti Affidavit 4, para. 5.

Trinity has argued that these statements by Fronduti are not related to decisions made with regard to Jernigan and Whitaker, and therefore would not allow a reasonable jury to infer that Trinity discriminated on the basis of age. Federal courts are not in agreement on the probative value to be assigned to "stray comments" evidencing prejudice or bias. *See Wilde v. Florida Pneumatic Manufacturing Corp.*, 941 F.Supp. 1203 (S.D.Fla.1996)(discussing the probative weight given by courts of appeals to "stray comments"). However, at least some federal courts have held that remarks evidencing bias or prejudice are circumstantial evidence of intent to discriminate, even if they are not made in the context of the employment decision at issue, if they are made by decisionmakers. *See Futrell v. J.I. Case*, 38 F.3d 342, 346 (7th Cir.1994). It is unclear exactly who made the decision to terminate Jernigan and Whitaker, however, Cecil Spear, Vice-President of Trinity, has testified in deposition that he decided who would be transferred to Plant # 32 within the parameters set forth by John Sanford. Spear affidavit, para. 6. Consequently, there is evidence that remarks which reflected a discriminatory motive were made by decisionmakers in the instant case. Furthermore, some federal courts have recognized that stray remarks

**1560**

are relevant circumstantial evidence even if made by nondecisionmakers. *See Ostrowski v. Atlantic Mutual Ins. Companies,* 968 F.2d 171, 182 (2nd Cir.1992). Consequently, this court finds that the Plaintiffs have provided evidence from which a reasonable jury could infer that age was a factor in the decisions to terminate Whitaker and Jernigan.

Since the Plaintiffs have established a prima facie case of discrimination, the burden of articulating a legitimate non-discriminatory reason for the employment decisions is placed upon Trinity. Trinity has offered as the reason for its employment actions that Jemigan's and Whitaker's positions were eliminated as part of a sale of Plant # 77 and there were no positions available in which to place Jernigan and Whitaker.

The burden is, therefore, placed upon the Plaintiffs to show that Trinity's articulated reason is a mere pretext for discrimination on the basis of age.[4] The Plaintiffs have provided evidence that presents a jury question as to whether Trinity created two new positions out of Vallancourt's former position, thereby calling into question the veracity of the articulated reason that there were no available positions into which Whitaker and Jernigan could have been transferred. In addition, as has already been discussed, the Plaintiffs have provided evidence which would allow a reasonable jury to infer that age was a factor in the employment decision. In the Eleventh Circuit, it is recognized that "summary judgment is not a proper vehicle for resolving claims of employment discrimination which ... turn on an employer's motivation and intent." *Pearson v. Macon–Bibb County Hospital Authority,* 952 F.2d 1274, 1280 (11th Cir.1992). Therefore, this court concludes that Trinity is not entitled to summary judgment as to Jernigan's and Whitaker's claims.

## V. CONCLUSION

Trinity has shown that there are no disputed issues of material fact with regard to

Plaintiff Stubblefield's claim and that it is entitled to judgment as a matter of law; therefore, Trinity's motion for summary judgment is due to be GRANTED as to Stubblefield's claim. However, Plaintiffs Jernigan and Stubblefield have provided evidence which establishes that there are disputed issues of material fact with regard to their ADEA claims. Trinity's motion for summary judgment is therefore due to be DENIED as to Jernigan's and Whitaker's claims.

It is therefore ORDERED as follows:

(1) Trinity's motion for summary judgment is GRANTED as to the claim asserted by Plaintiff Stubblefield, and judgment is entered in favor of the Defendant and against the Plaintiff, James Stubblefield;

(2) Trinity's motion for summary judgment is DENIED as to the claims brought by Plaintiffs Jernigan and Whitaker.

---

**4.** The Plaintiffs attempt to argue that an inference of discrimination can be drawn from the fact that there was no independent review of the decision not to transfer Jernigan and Whitaker. Upon review of the evidence provided by the Plaintiffs, however, the court concludes that this evidence merely establishes that these officials did not know if an independent review was done, and does not establish that no review was done since both Cunningham and Sanford said they were not aware if an independent review was done. Cunningham deposition, page 25 and Sanford deposition, page 117.