97 F.Supp.2d 1287 (2000)
Gerald W. HELLUMS, Plaintiff,
v.
WEBSTER INDUSTRIES, INC., Defendant.
No. CIV.A. 99-A-949-N.
United States District Court, M.D. Alabama, Northern Division.
May 25, 2000.
*1288 *1289 Gregory L. Davis, Montgomery, AL, for plaintiff.
Thomas T. Gallion, III, Montgomery, AL, for defendant.

MEMORANDUM OPINION
ALBRITTON, Chief Judge.

I. INTRODUCTION

This case is before the court on a Motion for Summary Judgment (Doc. # 11) filed by the Defendant Webster Industries, Inc. ("Webster") on March 8, 2000.
Plaintiff Gerald W. Hellums ("Hellums") filed his Complaint on August 31, 1999 alleging claims under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq. Webster filed an Answer on October 8, 1999. On April 20, 1999, Hellums filed a Motion for Leave to Amend to add a claim for retaliation to his Complaint. The court denied this motion on April 25, 2000 because it was untimely.
For reasons to be discussed, Webster's Motion for Summary Judgment is due to be GRANTED.

II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the `pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. See id. at 322-24, 106 S.Ct. 2548.
Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the `depositions, answers to interrogatories, and admissions on file,' designate `specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. See Anderson v. Liberty Lobby, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c).

*1290 III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:
Hellums was born in Alabama on November 29, 1938 and graduated from high school in 1958. After graduating from high school, Hellums worked in a variety of machine shops. In 1970, Hellums was hired by Webster, a plastic bag manufacturer, as a machine operator.[1] By 1972, Hellums was appointed lead operator of his line where he supervised 13 people. In 1973, Hellums was assigned to the job of Extrusion Supervisor where he was responsible for 40 employees. In the mid-1970s, Hellums was assigned to the position of Reclaim Shift Supervisor.[2] Hellums originally worked the 4-12 p.m. shift as Reclaim Shift Supervisor, but was then moved to the earlier day shift. As a day shift supervisor, Hellums took on additional responsibilities. Hellums remained the Reclaim Shift Supervisor until sometime in the mid 1980s when Hellums took the position of Safety and Process Supervisor.[3] As Safety and Process Supervisor, Hellums was responsible for accident prevention in the entire Montgomery operation. From 1989 through 1994, Hellums was assigned to various positions in the reclaim department, including becoming Reclaim and Sorema Manager. See Pl. Exh. B & C.
In 1995, Webster restructured its business. This restructuring occurred after Marvin Leef ("Leef") was hired as the new plant manager for Webster. During the restructuring, all department manager positions were eliminated, including Hellums' position of Sorema and Reclaim Manager, and Shift Managers were put into place. See Leef Depo. 109:2-13. Four Shift Managers were put into place: Barry Smith ("Smith"), Bryan Welch ("Welch"), Tony Player ("Player"), and Dennis Nadeau ("Nadeau"). Webster placed Hellums in the position of Sorema and Reclaim Supervisor.[4]
In 1997, the Reclaim/Sorema Manager position was reinstated. Peter Clark ("Clark"), a 35 year old male, was hired to fill this position.
In 1998, Webster continued to reorganize its operations in Montgomery. New equipment was installed in the Reclaim and Sorema department which required fewer employees to run. Hellums' position in the department was again eliminated. Webster offered Hellums the position of lead operator in the Reclaim department. Hellums did not accept this position and he resigned on April 18, 1998.
In his Complaint, Hellums uses a shotgun approach in making his ADEA claims.[5] Consequently, the court is left to interpret Hellums' claims. The court has interpreted his complaint to make a claim for discrimination based on age as a result of a reduction-in-force (¶ 16), a failure to promote claim (¶ 14), and a constructive *1291 discharge claim (¶¶ 15 & 17) all under the rubric of the ADEA.

IV. DISCUSSION

The ADEA, a remedial statute, was enacted to proscribe employment discrimination based on age. Under Title 29, United States Code, § 623(a)(1), "It shall be unlawful for an employer to ... discharge any individual or otherwise discriminate against any individual with respect to his compensation, conditions, or privileges of employment, because of such individual's age."[6] 29 U.S.C. § 623(a)(1)(1999). In ADEA cases, the plaintiff bears the ultimate burden of proving that age was the determining factor in the defendant's adverse employment action against him. See Baker v. Sears, Roebuck & Co., 903 F.2d 1515, 1519 (11th Cir.1990).
The plaintiff bears the initial burden of establishing a prima facie case under the ADEA. There are three means by which a plaintiff may seek to establish a prima facie case of age discrimination: by direct evidence of discriminatory intent, by meeting the test developed by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), or by proof of a statistical pattern of discrimination. See Verbraeken v. Westinghouse Electric Corp., 881 F.2d 1041, 1045 (11th Cir.1989); Davidson v. Quorum Health Group, Inc., 1 F.Supp.2d 1321 (N.D.Ala. 1997). In the present case, Hellums has not provided the court with direct evidence of discrimination[7] nor any statistical evidence, but instead seeks to prove discrimination by offering circumstantial evidence of discrimination.
Under the ADEA, the Eleventh Circuit has adopted a variation of the McDonnell Douglas paradigm for proving a prima facie case. See Jameson v. Arrow Co., 75 F.3d 1528, 1531 (11th Cir.1996). A plaintiff states a prima facie case upon a showing that he (1) is a member of the protected age group between the ages of forty and seventy, (2) was subject to an adverse employment action, (3) was replaced by a person outside the protected group, and (4) was qualified to do the job. See id.
After a plaintiff has established a prima facie case of discrimination, the burden of production is placed upon the employer to articulate a legitimate nondiscriminatory reason for its employment action. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the employer provides a legitimate nondiscriminatory reason for its actions, the burden shifts back to the plaintiff. See id. The plaintiff then has the opportunity to come forward with evidence, including previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. See Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir.1997). Although disbelief of the employer's proferred reason does not require judgment for the plaintiff, disbelief, together with the plaintiff's prima facie case, is sufficient circumstantial evidence to preclude entry of summary judgment. Id. at 1532.
*1292 In the present case, Hellums brings his discrimination claim under several different theories. Thus, the court will address each of his theories using the McDonnell Douglas framework.

A. Reduction in Force Claim
Because Hellums' positions in 1995 and 1998 were eliminated as part of Webster's restructuring, the court treats his demotion claim as a reduction in force claim ("RIF").[8]

1. Prima Facie Case
The prima facie case criteria are altered when there is a RIF. Under a RIF claim, a plaintiff must show that he (1) was in a protected group and was adversely affected by an employment decision, (2) was qualified for the current position or to assume another position at the time of discharge, and (3) has provided evidence by which a fact finder could reasonably conclude that the employer intended to discriminate on the basis of age in reaching that decision. See Jameson, 75 F.3d at 1531.
It is undisputed that Hellums is within a protected group, as he was 57 in 1995. It is also undisputed that Hellums' job position was eliminated in 1995 and in 1998. Webster, however, argues that Hellums' transfer to another job position in 1995 was not an adverse employment action because the new position allowed Hellums the opportunity to earn more income. See Def. Supp. Br. at 13.[9] The court notes that Hellums' substantial duties were changed and, for purposes of argument for this motion, the court will assume that Hellums was adversely affected by the reorganization at Webster.
It is also undisputed that Hellums was qualified for the position from which he was eliminated. See Def. Br. at 8. In 1995, Hellums had 25 years of plastic bag manufacturing experience. However, where "a particular job is entirely eliminated for nondiscriminatory reasons, for plaintiff to prevail against his employer he must show that he was qualified for another available job with that employer; qualification for his current position is not enough." Earley, 907 F.2d at 1082; see also Williams v. General Motors Corp., 656 F.2d 120, 129 (5th Cir. Unit B Sept. 1981); Langston v. Carraway Methodist Hospitals of Alabama, Inc., 840 F.Supp. 854 (N.D.Ala.1993). Webster does not dispute that Hellums would be qualified for another job at Webster.[10] In fact, in 1995, Webster assigned Hellums to another position and, in 1998, Webster offered Hellums the lead operator position in the Reclaim department. Thus, the court finds that Hellums was qualified for another available job, and the first two prongs of the prima facie case are met.
The third prong of the prima facie case requires that a plaintiff provide the court with evidence by which a fact finder could reasonably conclude that the employer intended to discriminate on the basis of age in reaching its employment decision. See Jameson, 75 F.3d at 1531. Hellums argues that there is substantial evidence of intent to discriminate on the *1293 part of Webster during the restructuring. First, Hellums alleges that in 1995, when the Sorema/Reclaim Supervisor position was eliminated, he should have been moved to the Sorema/Reclaim shift manager position. See Pl. Br. at 14; Pl. Supp. Br. at 2-3. According to Hellums, everyone who was made a shift manager during the 1995 reorganization was much younger than Hellums: Smith, 41; Welch, 30; Player, 33; Nadeau, 51. See Pl Br. at 14; see also Def. Exh. 1 (announcing the new shift managers). Also, Hellums alleges that during the reorganization, he was the only salaried management employee to receive a pay cut. See Pl. Supp. Br. at 1.
Second, Hellums argues that in 1997 when the Reclaim/Sorema Manager position was reinstated, Hellums was denied the opportunity to be considered for the position. See id. The position was ultimately filled by Clark, who was 35. See Pl. Br. at 14. According to Hellums, Clark was a new employee when he took the position of Reclaim/Sorema Manager, and this fact, in and of itself, is enough for Hellums to meet his prima facie burden. See id. at 14-15 (citing Jameson, 75 F.3d 1528).
Finally, to prove his prima facie case, Hellums relies on the Jameson case. In Jameson, the plaintiff's job position was eliminated when another company bought the company she was working for. See Jameson, 75 F.3d at 1530. The plaintiff was not offered another job with the new company. See id. A younger woman was hired during the reduction in force for an entry level position, that the plaintiff was qualified to do. See id. The Eleventh Circuit held that although the new company "incurred no absolute duty to hire [the plaintiff] into any of [the open] positions, its failure to do so, coupled with its decision to employ younger workers during its RIF, could give rise to a rebuttable inference that it intended to discriminate against [the plaintiff] on the basis of age." Id. at 1532. Hellums asserts that because younger workers were hired during the reorganization, namely Clark, and because Hellums was not hired as a Shift Manager, that he has met his prima facie burden, under the Jameson holding.
Webster argues that in 1995, during the first reorganization, Webster was forced to move other employees from their positions as managers. Many of these employees were younger than Hellums. For example, Jerome Williams, age 46, was moved from the extrusion department to shift supervisor; Smith, age 41, was moved from q.a. manager to shift manager; Welch, age 31, was moved from contract food manager to shift manager; Player, age 33, was moved from supervisor to shift manager; Nadeau, age 51, was moved from reprocessing department manager to shift manager. See Def. Supp. Br. at 7-8. According to Webster, this indicates that age was not a factor used in the reorganization of the Montgomery operation. Moreover, Webster alleges that Hellums received a pay increase when he was reassigned in 1995, further indicating it was not discriminating against Hellums based on his age during the reorganization of Webster. See id. at 8 (citing Def. Exh. G).
First, the court notes that Hellums' reliance on Jameson is misplaced. The facts of Jameson are quite different from the facts in the present case. In the present case, during both reorganizations of Webster, Webster offered Hellums a job within the company that he was qualified to do. Jameson does not stand for the proposition that merely because another younger employee was hired during a RIF that there is an inference that the company was discriminating based on age. In fact, the Jameson court is quite clear that its holding is limited. See Jameson, 75 F.3d at 1533. ("Our decision ... is narrow in scope ...."). Second, the court notes that younger employees were moved during the restructuring in 1995, indicating that age was not a factor in the process. Third, the court notes that some employees in the "protected class," namely Nadeau and *1294 Smith were made Shift Managers in 1995, again suggesting that age was not a factor in the reorganization.
For these reasons, it does not appear that Hellums has established a prima facie case of age discrimination. However, the court need not decide this issue and will assume, for purposes of this motion, that Hellums has met his burden of establishing a prima facie case.

2. Legitimate, Non-Discriminatory Reason
Assuming that Hellums has established a prima facie case, Webster has produced legitimate, non-discriminatory reasons for its employment decisions concerning Hellums. See Def. Br. at 9. As noted above in 1995 and 1998 Webster was undergoing a restructuring of its Montgomery operation to "increase efficiency, productivity, and profitability." Id.; see also Def. Supp. Br. at 15. In order to effectuate its reorganization plan, Webster argues it made a reasonable business decision to eliminate a variety of positions and combine certain departments. See Def. Supp. Br. at 15. As a part of this reorganization, Hellums' job positions were affected in both 1995 and 1998. See Def. Exh. 1. Webster notes that in both 1995 and 1998, it offered Hellums another position within the company.
Further, Webster argues that it did not put Hellums in the position of Shift Manager in 1995 because Hellums was not qualified.[11]See Def. Supp. Br. at 7. Leef testified that Hellums was not experienced enough to hold the position:
Q: So he didn't get offered the position because he didn't have experience in bag converting and he did not have technical knowledge of extrusion blown film bag converting?
A: That is correct.
Q: And that is the only two reasons?
A: That's correct.
Leef Depo. at 42-43. Bruce Linson, Operations Manager of Webster, when questioned during deposition also stated that Hellums was not qualified for the shift manager position in 1995:
Q: The shift manager's position came open. Was Gerald Hellums considered for that position at that time?
A: No.
Q: Why not?
A: Because he did not have the leadership skills or the blown film extrusion or conversion skills that I was looking for.
Linson Depo. at 26:17-27:1. Thus, according to Webster, Hellums was not qualified to be put in the position of shift manager in 1995.
As for Hellums' claim that he was not considered for the position of Reclaim/Sorema Manager in 1997 when the position was reinstated, Webster argues that although the title of the position was the same as a title Hellums had previously held, Hellums was not qualified for the position in 1997.[12]See Def. Supp. Br. at 9. According to Webster, the newly reinstated position of Reclaim/Sorema Manager was different in 1997 then in 1995 because new machinery was being used. See id. Merritt Davis reprocessing machines had been installed as part of the reorganization plan at Webster, and Hellums testified that he was not familiar with the reprocessing machines. See id. (citing Hellums Depo. at 68:22-69:4).
Webster only has a burden of production at this stage. Accordingly, the court finds that Webster has satisfied its burden of articulating legitimate nondiscriminatory *1295 reasons for its employment actions. See Burdine, 450 U.S. at 254, 101 S.Ct. 1089.

3. Pretext
Because Webster was able to produce legitimate, non-discriminatory reasons for eliminating Hellums' job positions and for not promoting Hellums to the position of Reclaim/Sorema Manager or Shift Manager, Hellums now has the burden of showing sufficient evidence to warrant a conclusion that Webster's proferred reasons were pretextual. See Carter v. City of Miami, 870 F.2d 578, 584 (11th Cir.1989).
Hellums relies largely on the facts he used for his prima facie case to prove pretext. See Pl. Br. at 19. For example, Hellums argues that because Webster hired a younger employee, Webster's reasons for not making Hellums the Reclaim/Sorema Manager in 1997 were pretextual. See id. Hellums also alleges that there is substantial evidence that he had the experience and the knowledge to have become a Shift Manager in 1995 during the first reorganization. See id. at 20. Finally, Hellums relies on the fact that Barry Smith was placed in the position of Shift Manager, although he had no experience in the reclaim or sorema areas and he had previously only managed 40 people. See id. at 20-21 (citing Leaf Depo. 55-56). Hellums also argues that "Webster's organization plan merely changed Department Managers to Shift Managers and the new Shift Managers positions were also filled by substantially younger employees." Id.
Although a plaintiff may use evidence of his prima facie case to prove pretext, "a plaintiff may not [merely] rest on the laurels of [his] prima facie case in the face of powerful justification evidence offered by the defendant." Grigsby v. Reynolds Metals Co., 821 F.2d 590, 596 (11th Cir.1987). Here, this is precisely what Hellums has done; Hellums has not produced evidence that delegitimizes the validity of the RIF as the basis for eliminating his job or that the reorganization involved just a mere switching of titles. In fact, it is difficult to believe that Webster reorganized its entire Montgomery operation twice in an effort to mask its decision not to retain Hellums as an employee in a managerial position. Further, although Hellums has suggested that there is evidence that he was qualified for the Shift Manager position and the Reclaim/Sorema Manager position, he has not shown that he was equally or more qualified than those hired or that age played a role in the decision making process during the RIF. For these reasons, the court finds that Hellums has presented insufficient evidence from which a reasonable juror could disbelieve the powerful legitimate reasons proferred by Webster. Accordingly, Webster's Motion for Summary Judgment is due to be granted on Hellums' RIF claim.

B. Failure to Promote
The court is uncertain whether Hellums is alleging a separate failure to promote claim in his Complaint, or whether the facts surrounding the 1997 reinstatement of the Reclaim/Sorema Manager are provided as evidence of Hellums' RIF claim. The court finds, however, that even if it Hellums has alleged a separate failure to promote claim, Hellums is unable to meet his prima facie burden.
In a failure to promote claim, in order to establish a prima facie case a plaintiff would have to show: (1) that he belongs to a protected group, (2) that he applied for and was qualified for the position for which the employer was seeking applicants, (3) that he was denied the promotion, and (4) that another equally or less qualified individual outside the protected class received the promotion. See Batey v. Stone, 24 F.3d 1330, 1334 n. 11 (11th Cir. 1994) (citing Wu v. Thomas, 847 F.2d 1480, 1483 (11th Cir.1988)); see Earley, 907 F.2d at 1081. Hellums is unable to show that he was qualified for the position or that another "equally or less qualified individual" filled the position.
*1296 The position of Reclaim/Sorema Manager was recreated in 1997. According to Leef, in order to be qualified for the new position an employee had to be familiar with Merritt Davis reprocessing machines. These machines were new at Webster and had been installed as part of the reorganization of Webster because these machines required less staff to operate. See Def.Supp. Br. at 9; Exh. D.
Hellums argues that he was qualified for the position because in 1997 he had 25 years of experience in the plastic bag industry and he had taken numerous management training seminars. See Pl. Br. at 14. Hellums, however, testified in his deposition that he was not familiar with the Merrit Davis reprocessing machines. Consequently, Hellums was unqualified for the position. Moreover, Clark, who was hired for the position, was qualified to operate the Merritt Davis reprocessing machines. Clark also had higher educational qualifications than Hellums, and had specific experience managing a large number of people. Therefore, Clark was not "equally or less qualified" than Hellums. Hellums, therefore, is unable to prove his prima facie case.
Even assuming Hellums could make out a prima facie case for failure to promote, Webster has provided a legitimate, non-discriminatory reason for its actions. According to Webster, Hellums was not qualified for the position of Reclaim/Sorema Manager. Thus, Hellums would still have to produce evidence that Webster's reason was pretextual.
"It is not appropriate for the court[] to fetter management's discretion by substituting [its] own judgment as to proper [employment] practices." Furnco Constr. Corp. v. Waters, 438 U.S. 567, 578, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978) (brackets supplied). In the present case, Webster reorganized its Montgomery operation in an effort to increase productivity. During this reorganization, Webster hired what they believed to be a more qualified employee to manage the Reclaim and Sorema departments. The court will not second guess the hiring decisions of Webster without some evidence that Webster was basing its decision on age or that they did not believe that Clark was more qualified. Hellums has not made such a showing. Although, Hellums has provided evidence of his management skills and his knowledge of the plastic bag industry, Hellums has not shown that he had the specific skills Webster was looking for. Although, Clark was younger than Hellums, Hellums has not produced evidence to indicate that age played any role in the employment process. Accordingly, the court finds that there is no genuine issue of fact with regards to any possible failure to promote claim Hellums may be asserting and Webster's Motion for Summary Judgment is due to be granted on Hellums' failure to promote claim.

C. Constructive Discharge
An ADEA claim may be predicated upon a claim of constructive discharge. See Castle v. Sangamo Weston, Inc., 837 F.2d 1550, 1559 (11th Cir.1988). To succeed on an ADEA claim based on constructive discharge, a plaintiff must make a twofold showing: "that the employer's actions were impermissibly motivated by the plaintiff's age, and that these actions made the plaintiff's working conditions so intolerable that resignation is deemed involuntary." Cook v. American Gen. Life & Accident Ins. Co., 952 F.Supp. 1505, 1512 (M.D.Ala.1996) (DeMent, J.) (quoting Griswold v. Alabama Dept. of Indus. Relations, 903 F.Supp. 1492, 1496 (M.D.Ala.1995)); see also Poole v. Country Club of Columbus, Inc., 129 F.3d 551, 553 (11th Cir.1997). "In assessing constructive discharge claims, [courts] do not consider a plaintiff's subjective feelings about his employer's actions. Rather, [courts] determine whether `a reasonable person in [the plaintiff's] position would be compelled to resign.'" Doe v. Dekalb County Sch. Dist., 145 F.3d 1441, 1450 (11th Cir.1998) (quoting Steele v. Offshore Shipbuilding, *1297 Inc., 867 F.2d 1311, 1317 (11th Cir.1989)). A reasonable employee is one who does not "assume the worst" or "jump to conclusions too fast." Garner v. Wal-Mart Stores, Inc., 807 F.2d 1536, 1539 (11th Cir.1987).
Hellums contends that the actions of Webster on which he based his RIF and failure to promote claims made his working conditions so intolerable that he was compelled to resign. The court finds, however, that Hellums is unable to meet either requirement for a constructive discharge claim. First, as discussed above with reference to Hellums' other claims, Hellums is unable to adduce evidence that Webster's actions were impermissibly motivated by the Hellums' age. Second, although Hellums was asked to take a lower paying job in 1995 and 1998, it is not likely that this would be enough to make a reasonable person in the plaintiff's position feel compelled to resign.[13] Even the position offered in 1998 which reduced or eliminated Hellums' benefits, and reduced his salary and responsibility did not make the working environment at Webster so intolerable so as to force a resignation. Although Hellums may have found the demotions humiliating after working in a management position, the holding in Garner makes clear that hurt feelings are insufficient as proof of constructive discharge. Accordingly, Webster's Motion for Summary Judgment is due to be granted on Hellums' constructive discharge claim.

V. CONCLUSION

For the reasons discussed above, Webster's Motion for Summary Judgment is due to be GRANTED. A separate Order will be entered in accordance with this Memorandum Opinion.
NOTES
[1] Hellums began in 1970 working for Bes-Pak Company. Bes-Pak Company was purchased by Webster in 1973 or 1974. See Pl. Br. at 2 n. 1.
[2] The precise year of this transfer is not clear. Webster alleges that Hellums made this transfer in 1975 and Hellums alleges that he made this move in 1976.
[3] Again, the dates differ as to when Hellums changed jobs. Hellums alleges he became Safety Supervisor in 1984, Webster alleges that Hellums did not become Safety Supervisor until 1987. The precise date has no effect on Hellums' claims against Webster.
[4] Hellums alleges that this position was a lower position than he previously held and that his salary was cut $5,500. See Pl. Br. at 4.
[5] The court thinks it prudent to point out that "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir.1995) (citations omitted).
[6] According to § 631(a), "The prohibitions in this chapter shall be limited to individuals who are at least 40 years of age." 29 U.S.C. § 631(a) (1999). Section § 631(c)(1), however, also states that "[n]othing in this chapter shall be construed to prohibit compulsory retirement of any employee who has attained 65 years of age ...." 29 U.S.C. § 631(c)(1).
[7] The Eleventh Circuit has defined direct evidence as "evidence which, if believed, would prove the existence of a fact [in issue] without inference or presumption." Carter v. City of Miami, 870 F.2d 578, 581-82 (11th Cir.1989). One example of direct evidence would be "Fire Earley-he is too old." Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir.1990). Hellums makes no allegations that any specific comments were made to him concerning his age. Thus, Hellums has no direct evidence of age discrimination.
[8] As evidenced by the briefs, the parties also treat Hellums' claim as a RIF.
[9] Hellums argues that although he did make more money after he was reassigned in 1995, as indicated on his W2 tax form, see Exh. G, it was only because he worked more hours than he did in his previous position. See Pl. Supp. Br. at 2-3.
[10] Webster does dispute, however, that Hellums was qualified to fill the position of Shift Supervisor during the 1995 reorganization. See Def. Supp. Br. at 6 & 13-14. Linson testified that Hellums was not qualified for this position "because he did not have the leadership skills or the blown film extrusion or conversion skills" that Linson believed were necessary for the Montgomery operation to operate efficiently. See Linson Depo. 26:22-23. The question of whether Hellums was qualified for a specific job rather than a job in Webster really goes to whether Webster had a legitimate, non-discriminatory reason for his transfer, not whether Hellums is able to meet his prima facie case.
[11] According to Webster, the shift manager position would be required to manage 100-120 people and would require "experience in each department or the equivalent." See Def. Supp. Br. at 7.
[12] Linson stated, "The title may be the same, but I didn't consider it to have the same responsibilities. We were needing somebody that took on more responsibilities than Mr. Hellums had." Linson Depo. 42:17-19.
[13] As an example of a valid constructive discharge claim the court notes the case of Poole v. Country Club of Columbus, Inc., 129 F.3d 551, 553 (11th Cir.1997). In Poole, the Eleventh Circuit found that when a person is "[s]tripped of all responsibility, given only a chair and no desk, and isolated from conversations with other workers" that this is enough evidence to suggest that a reasonable person might find the working conditions intolerable. Poole, 129 F.3d at 553. It is clear that Hellums has not alleged evidence that compares to the plaintiff in Poole.